**CONTAINERFREIGHT TRANSPORTA-TION COMPANY and AAA Transfer, Inc., Petitioners,**

v.

**INTERSTATE COMMERCE COMMIS-SION and the United States of America, Respondents,**

and

**Bass Transportation Co., Inc., and M. Nolden, Trustee, Osborne West Ltd., Intervening Respondents.**

No. 80–7178.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 1981.

Decided July 23, 1981.

Daniel W. Baker, Handler, Baker, Greene & Taylor, San Francisco, Cal., Miles L. Kavaller, Mandel & Kavaller, Beverly Hills, Cal., for petitioners.

H. Glenn Scammel, Gen. Counsel, Washington, D. C., Robert B. Nicholson, Washington, D. C., for respondents.

Before GOODWIN and BOOCHEVER, Circuit Judges, and PALMIERI,* District Judge.

PER CURIAM:

This is a proceeding to review an order of the Interstate Commerce Commission (ICC) as provided by 28 U.S.C. § 2321(a) and § 2342(5). The factual background is substantially undisputed. On May 9, 1977, Osborne West Ltd. (OWL) secured authority as a motor common carrier for round-trip container transportation between westcoast ports and shippers in ten states. The initial decision of the Administrative Law Judge of the ICC followed extensive hearings. A number of shippers and others supported the application, while protests were made by a considerable number of competing carriers, among them the petitioners here. In granting the authorization, the ALJ found as required by statute that the proposed service "is or will be required

---

* Honorable Edmund L. Palmieri, Senior United States District Judge, Southern District of New York, sitting by designation.

by the present or future public convenience and necessity" and that OWL was "fit willing and able properly to perform the service proposed...." § 207(a) of the Interstate Commerce Act, formerly codified at 49 U.S.C. § 307(a) (current version at 49 U.S.C. § 10922(a)).

The protesters appealed to the Commission. While that appeal was pending, and before OWL had begun operating the proposed service, OWL went into bankruptcy. Respondent Bass Transportation Co. (Bass) agreed to purchase from the trustee in bankruptcy for $175,000 OWL's operating rights and the right to be substituted for OWL in the pending application. At the request of Bass and the OWL trustee, the Commission by order of June 19, 1978 substituted Bass as applicant, affirmed the "findings of the Administrative Law Judge concerning the public need for service," and remanded for further proceedings regarding Bass.

On remand, the ALJ found that Bass was fit and willing but not able to undertake the service proposed in the OWL application; that the "venture proposed has not been shown to be feasible"; and that the shippers who supported OWL in the original hearing "have not been shown to support Bass for the proposed service." The ALJ denied Bass's application. On administrative review, the Commission adopted the ALJ's statement of facts but reversed his "ultimate findings and orders" and granted Bass's application for authority to conduct the operations originally proposed by OWL.[1]

■ When the Commission reviews a finding of its ALJ, it is authorized by statute to decide all issues *de novo*. 5 U.S.C. § 557(b). The Administrative Procedure Act "does not relegate the Commission to the role of reviewing court" but rather "confers on [it] the right to make its own conclusions from the evidence." *Union Mechling Corp. v. United States*, 390 F.Supp. 411, 419 (W.D.Pa.1974) (3-judge court). Nor is the Commission compelled to adopt the same approach as the ALJ to the facts developed at a hearing. *Bowman Transportation Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 298, 95 S.Ct. 438, 448, 42 L.Ed.2d 447 (1974).

■ Petitioners' principal complaint in this proceeding relates to the terms of the Commission's remand after it substituted Bass for OWL and affirmed the ALJ's finding of public need for the proposed service. The remand had a valid purpose for a determination of whether Bass was financially able to perform the service and had the requisite capabilities, and there was ample evidence from which the Commission could so decide. The remand order, however, also called on the ALJ to determine "the operational feasibility of the venture and the extent of supporting witnesses' support of Bass for the proposed service." The ALJ, faithful to this mandate, took testimony on these issues and concluded that Bass's proposed operations were not feasible and lacked credible support from the shippers who had supported OWL. The Commission reversed these conclusions, largely because the feasibility and support for the service had already been determined in the original decision on the OWL application.

■ The record is unclear as to why the Commission remanded for further findings on issues already decided. We note that shipper support is relevant primarily to the need for a proposed service rather than the merits of a particular applicant. See *H. C. Gabler, Inc. Extension*, 86 M.C.C. 447, 470 (1961); Fair & Guandolo, Transportation

---

1. The Commission's final order granted Bass authority

To operate as a common carrier by motor vehicle, in interstate or foreign commerce, over irregular routes, transporting (1) *general commodities* (except Classes A and B explosives and articles of unusual value), in containers or in trailers, and (2) *empty used containers, used trailers*, and *used trailer*

*chassis*, between ports of entry in California, Oregon, and Washington, on the one hand, and, on the other, points in Arizona, California, Colorado, Idaho, Nevada, New Mexico, Oregon, Utah, Washington, and Wyoming, restricted to the transportation of traffic having an immediately prior or subsequent movement by water.

Regulation 252 (8th Ed. 1979). Petitioners appear to suggest that the Commission's remand order established in some fashion the law of the case, and that the Commission was therefore obliged to make its final disposition on the basis of the issues framed in the remand order. We do not accept this view. The commission has broad discretion to remand for further findings even if those findings may ultimately prove irrelevant. At most, petitioner's argument tends to show that the remand order was ill conceived. Even if this were so, there was no prejudice to petitioners except the inconvenience of a second hearing. A mistake of this kind, if indeed it was a mistake, would not justify invalidating an ICC order otherwise supported by substantial evidence.

 Petitioners allege that they are the victims of a recent ICC policy of "wholesale approval" of motor carrier applications, and that the ICC has set a "quota" of certificates to be issued regardless of the law. Nothing in the record supports this assertion. It is true that transportation policy has been evolving in favor of increased competition. "Public convenience and necessity" was once thought to mean preventing competition that would weaken established carriers. See F. Kahn, Principles of Motor Carrier Regulation 59 (1958). Now the Motor Carrier Act of 1980 has explicitly included the promotion of competition as a goal of national transportation policy. 49 U.S.C. § 10101(a)(7). Though the 1980 amendments do not apply to this case, they are declarative of the changing perception of the public interest on which the Commission had the power and duty to act. Just as in the *Bowman Transportation* case, here the Commission took an approach more favorable to competition than did the ALJ. Congress has entrusted the balancing of factors affecting the public interest neither to the ALJ nor to this court but to the Commission. *Id.*, 419 U.S. at 293, 95 S.Ct. at 445. Since the Commission has made a reasonable judgment based on substantial evidence, it follows that the decision should be AFFIRMED.