PELL, Circuit Judge.
 

 Defendant-appellant, Robert D. Alexander, Sr., appeals from his conviction for violation of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, and the sentence imposed pursuant to the convictions. Defendant raises three main grounds for reversal. First, he claims that an initial administrative decision in his favor on a Postal Service complaint to stop his mail collaterally estops the Government to prosecute the criminal charges against him. Second, he contends that the instructions tendered by the Government and given by the trial court with respect to the defense of good faith were erroneous. Third, he alleges that the special conditions of probation imposed by the trial court were unduly restrictive and contravened the provisions of the Bankruptcy Code.
 

 I. THE PACTS
 

 The nine-count indictment against defendant, an Illinois resident, arose from his business of reconditioning, repairing, selling, and installing heavy duty truck scales used by his customers to weigh farm and other commodities. The indictment, handed down on November 16, 1982, charged defendant with a scheme to defraud and to obtain money by means of false and fraudulent promises. For twenty-five years, defendant owned and operated Peoria Scale Service. He sold and installed approximately 1100 scales from the inception of his business until creditors forced him into involuntary bankruptcy on March 3, 1982. The State of Illinois had revoked his license to repair scales in March 1981, but much of his business had always come from outside Illinois, and he continued to do business until the creditors filed their bankruptcy petition.
 

 On August 12, 1982, after defendant’s creditors filed their petition for bankruptcy but before either the discharge in bankruptcy or the indictment, the United States Postal Service filed an administrative complaint against Peoria Scale Service. The complaint, filed pursuant to 39 U.S.C. § 3005, sought to enjoin defendant’s company from receiving any mail connected to an alleged scheme to obtain money through the mails by means of false pretenses. On December 17, 1982, after a hearing, the administrative law judge denied the requested injunction, finding that the Postal Service had failed to prove that the company had been involved in a scheme to defraud. Between the time the Postal Service filed its complaint and the decision of the administrative law judge, the Government indicted defendant on criminal charges based upon most of the same transactions through which the Postal Service had sought to establish its right to an injunction.
 

 Defendant contended before the trial court that the Postal Service’s unsuccessful complaint acted as a bar to the fraud charges and that the decision of the administrative law judge amounted to collateral estoppel against the Government from re-litigating the claims of fraud. The district court denied defendant’s motion to dismiss the indictment. The court held that the purposes of the two proceedings were sufficiently different that the Postal Service’s
 
 *474
 
 action did not preclude institution of criminal charges, despite the similarity of the issues involved. In his appellate briefs, defendant again contends that, under the doctrine of collateral estoppel, the mail fraud counts should have been dismissed.
 

 A four-day jury trial took place in January 1983. The Government produced a substantial number of witnesses who had a business relationship with defendant. Although the evidence produced by the examination of these witnesses varied, the testimony of David Ungeheuer typified the evidence that the Government produced. Un-geheuer read defendant’s advertisement for used scales in a farm journal and called defendant, who said that he would charge $16,000 for the desired scale. Similar new scales cost between $25,000 and $35,000. Several weeks later, defendant called Ungeheuer and offered to sell the same scale for $14,000, including delivery and installation at Ungeheuer’s convenience, if he agreed to buy the scale immediately. In October 1981, he sent to defendant $5,200 of a $10,500 down payment, with the balance of the down payment due upon delivery. Again, the parties indicated that the work was “to be started at buyer’s convenience.” Ungeheuer requested that defendant perform the work in the late fall of 1981. Nobody from defendant’s company ever came to Ungeheuer’s property to begin the installation process, nor did he ever receive any refund. Through this and other testimony, a pattern developed of defendant charging very low prices, demanding large down payments, and then never performing any substantial work on the projects.
 

 After closing arguments, the trial judge instructed the jury. The charge included two instructions to which defendant made timely objections at trial and which defendant now presses as a ground for reversal. Government’s Instruction 20 stated: “An honest belief by the Defendant that he will ultimately be able to perform what he has promised is not in itself a defense to the crimes charged.” Defendant contends that this instruction is not legally accurate and unduly prejudiced the good faith defense that formed the basis of defendant’s theory of the case. The next instruction given, Government’s Instruction 21, stated: “It is no defense to the crimes charged that not all of the persons with whom the Defendant dealt in his business were defrauded.” Defendant claims that Instruction 21 was unnecessary, misleading, and prejudicial because it amounted to an unwarranted instruction to disregard the testimony from satisfied customers. Defendant contends that the instruction should have stated that such testimony, while relevant, was not dispositive. The next instruction, as to which defendant does not claim error, stated: “If the jury should find that, at the time made, the representations and promises which the Government alleges to be fraudulent, were made in good faith, the fact that any such representations or promises were later unfulfilled does not warrant a verdict of guilty.” Defendant contends that this sequence of instructions deprived him of his right to a fair trial.
 

 The jury returned a verdict of guilty on five of the nine counts. After the judge denied defendant’s post-trial motions, he imposed a suspended sentence and placed defendant on five-years’ probation on each count, with the counts to run concurrently. Among the five special conditions of probation, defendant objects to two. First, the judge ordered defendant to make restitution of $47,000 total, during the course of the probation, to the victims named in the counts of which the jury found defendant guilty. Defendant objects to the condition on the ground that it avoids the effect of the relief ordered by the bankruptcy judge, who had discharged the claims of all of the victims. Second, the judge prohibited defendant from “maintaining a proprietary interest in any business that sells, replaces, or installs either permanent or portable weigh scales.” Defendant contends that the second condition deprives him of any reasonable opportunity to fulfill the first condition, assuming the validity of that condition, because the scale business had been his sole occupation for over thirty years and his age, sixty-two, makes it unlikely
 
 *475
 
 that he could secure substantial gainful employment in another endeavor.
 

 After submission of the briefs to this court, but before the oral argument, the Postal Service Judicial Officer reversed the decision of the administrative law judge and enjoined delivery of any mail to Peoria Scale Service that related to the sale and installation of scales. At oral argument, counsel for defendant continued to assert that the proceeding before the Postal Service administrative law judge should have precluded the prosecution of criminal charges. Although counsel conceded that he had no direct authority for the proposition, he alleged, nonetheless, that the initial administrative decision had a res judicata effect upon the subsequent criminal trial, despite the fact that the initial decision was subject to further agency review.
 

 II. INSUFFICIENT EVIDENCE
 

 Defendant’s first claim is that the evidence was insufficient to convict him of the crimes charged. The claim merits only brief discussion. The standard of review of claims of insufficient evidence is the traditional reasonable doubt test.
 
 See, e.g., United States v. Moya,
 
 721 F.2d 606, 609 (7th Cir.1983),
 
 cert. denied,
 
 — U.S. —, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984). That is, we must determine “whether, after reviewing the evidence in the light most favorable to the prosecution,
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). This standard preserves “the factfinder’s role as weigher of the evidence.”
 
 Id.
 

 The evidence established a pattern of conduct by defendant from which the jury could infer a scheme to defraud. Most of the acts alleged in the indictment fit into the same pattern. Defendant advertised in a number of regional farm journals. His prices were substantially lower than those available from other scale dealers for comparable scales. When a customer would contact defendant about installation of a scale, defendant would assure the customer that he had, or soon could obtain, a scale to fulfill the customer’s requirements. The customer would then have to make a substantial cash deposit, usually at least two-thirds of the total purchase price. In some cases, defendant’s employees would proceed to do a minimum amount of work, such as digging a foundation for the scale, often at additional expense to the customer; then, the employees would abandon the site with most of the work left undone. In many instances, no employees ever appeared. Later, when a customer would make inquiries, defendant assured the customer that he would fulfill his commitments, although performance of the contract never occurred. After repeated inquiries, many customers gave up hope of ever getting their scale from defendant. Some made demands for refunds, but defendant never returned any down payment.
 

 From the evidence produced at trial, when viewed in the light most favorable to the verdict, a rational trier of fact could have found that the Government proved the elements of the crimes charged beyond a reasonable doubt. Therefore, defendant’s sufficiency of the evidence claim fails.
 

 III. COLLATERAL ESTOPPEL
 

 Defendant’s claim that collateral estoppel should prevent the Government from pursuing the criminal prosecution requires more detailed examination. Defendant’s argument presupposes two conditions: first, that an initial administrative decision merits collateral estoppel effects; and, second, that a dismissal for collateral estoppel is a decision on the merits. We need not, however, decide whether a collateral estop-pel dismissal is equivalent to a decision on the merits because, as explained below, the first condition to defendant’s argument is not satisfied.
 

 The doctrine of collateral estoppel is a judicially developed mechanism to “relieve parties of the post and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.”
 
 Allen
 
 
 *476
 

 v. McCurry,
 
 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In two recent decisions, the Supreme Court has discussed the limitations of the doctrine. In
 
 United States v. Stauffer Chemical Co.,
 
 — U.S. —, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984), the Court determined that collateral estop-pel applied against the Government when the Government had lost a previous case involving both the same adverse party and the same controlling issue. Although the Government was not a named party in the first case, it had controlled the entire litigation on behalf of the named party. Thus, there was mutuality between the parties, the nature of the two civil proceedings was similar, and both involved the same determinative issue. In
 
 United States v. Mendoza,
 
 — U.S. —, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), the Court unanimously held that a petitioner for naturalization could not assert collateral estoppel against the Government when he was not a party to the earlier judgment. The Court held that there was no nonmutual offensive collateral estoppel against the Government.
 

 The applicability of collateral estoppel to criminal cases is of fairly recent origin. The Supreme Court has stated that “the doctrine of collateral estoppel is not made inapplicable by the fact that this is a criminal case, whereas the prior proceedings were civil in nature.”
 
 Yates v. United States,
 
 354 U.S. 298, 335, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957). The Court did not preclude the Government from prosecuting defendant, however, because the issues involved in the criminal case were not identical to those in the civil denaturalization case, in which defendant had prevailed.
 
 Id.
 
 More recently, the Court has again discussed the applicability of collateral es-toppel to criminal cases.
 
 Standefer v. United States,
 
 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). With reference to the fact that the Government cannot appeal from a judgment of acquittal, the Court stated that it did not “suggest that the availability of appellate review is always an essential predicate of estoppel. The estop-pel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or similar procedures, such confidence is often unwarranted.”
 
 Id.
 
 at 23 n. 18, 100 S.Ct. at 2007 n. 18 (citations omitted). More fundamentally, the Court noted that “the important federal interest in the enforcement of the criminal law suggests that collateral estoppel effects from noncriminal to criminal proceedings should be recognized only .sparingly.
 
 Id.
 
 at 24, 100 S.Ct. at 2008. The Court quoted approvingly,
 
 id.
 
 at 25, 100 S.Ct. at 2008, the reasoning of the Third Circuit in
 
 Stande-fer:
 

 [T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases .... To plead crowded dockets as an excuse for not trying criminal defendants is in our view neither in the best interests of the courts, nor the public.
 

 United States v. Standefer,
 
 610 F.2d 1076, 1093 (3d Cir.1979). The Court then concluded that “this criminal case involves ‘competing policy considerations’ that outweigh the economy concerns that under-grid the estoppel doctrine.” 447 U.S. at 25, 100 S.Ct. at 2008.
 

 Although there was no mutuality of parties in
 
 Standefer,
 
 while there is mutuality of parties in the present case, the Supreme Court’s rationale provides a guidepost for the resolution of this case. In no case has a federal court presiding over a criminal trial granted preclusive effect to a prior administrative ruling contrary to the Government’s position in the criminal case. To allow such preclusion would present a debilitating impediment to the enforcement of the federal criminal law.
 
 Cf Mancuso v. Harris,
 
 677 F.2d 206, 209-10 (2d Cir.1982) (a state may have unequal incentives to litigate codefendants’ habeas claims;
 
 *477
 
 court refused to allow preclusive effects between habeas eases as an undue impingement upon the discretionary decisions of district attorneys based upon “a variety of factors, some of which are unrelated to the legal issues in a case”),
 
 cert. denied,
 
 459 U.S. 1019, 103 S.Ct. 382, 74 L.Ed.2d 514.
 

 Furthermore, collateral estoppel in this context would affect seriously the executive branch decisions to enforce regulatory schemes. If an administrative decision against the Government precluded subsequent prosecutions, the Government might hesitate to bring enforcement proceedings at all. The clear intent of Congress in the establishment of these regulatory schemes was to provide an informal and expeditious adjudicatory setting for the determination of regulatory violations, subject, of course, to various mechanisms of review. If we were to endow initial administrative decisions with preclusive effects on criminal actions, the Government would either have to postpone the administrative action until it obtained a favorable result in the corresponding criminal case or have to allocate substantially greater resources to the enforcement of regulations to increase the likelihood of a favorable outcome at the administrative level. We refuse to impose such a burden upon the Government’s decisions as to the allocation of its limited resources.
 

 Finally, we also hesitate to endow the initial decision of the administrative law judge with preclusive effects because of the preliminary nature of that decision. Several indicia of finality usually required of decisions before collateral estoppel applies are not present in an administrative law judge’s initial decision. Most important is the extent of administrative review that an administrative law judge’s decision must undergo before it becomes the final action of the agency. The Administrative Procedure Act provides: “On [administrative] appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule.” 5 U.S.C. § 557(b). None of the regulations that govern administrative practice before the Postal Service limits the authority of the Judicial Officer to review initial decisions.
 
 See
 
 39 C.F.R. § 952.26 (1983). Consequently, the Judicial Officer has the power to conduct a
 
 de novo
 
 review of the administrative law judge’s adjudication,
 
 Containerfreight Transportation Co. v. Interstate Commerce Commission,
 
 651 F.2d 668, 670 (9th Cir.1981);
 
 Homan & Crimen, Inc. v. Harris,
 
 626 F.2d 1201, 1205 (5th Cir.1980),
 
 cert. denied,
 
 450 U.S. 975, 101 S.Ct. 1506/67 L.Ed.2d 809 (1981), except, perhaps, for credibility determinations,
 
 see, e.g., Allentown Broadcasting Corp. v. Federal Communications Commission,
 
 222 F.2d 781 (D.C.Cir.1954) (applying Federal Communications Act),
 
 cert. denied,
 
 348 U.S. 910, 75 S.Ct. 296, 99 L.Ed. 713.
 

 Until a Judicial Officer affirms an administrative law judge’s initial decision or the losing party chooses to. forego administrative review, an initial administrative decision does not present a compelling case for estoppel. Indeed, if there is an administrative appeal, the initial decision of the administrative law judge is not the “final agency decision.” 5 U.S.C. § 557(b). Even had the Judicial Officer affirmed the administrative law judge’s decision in the present case, we would not grant the final administrative decision estoppel effects because of the strong policy in favor of the enforcement of the criminal law.
 

 IV. THE INSTRUCTIONS
 

 Defendant’s objections to the instructions, properly preserved below, derive from the juxtaposition of two of the instructions. The first stated that defendant’s honest belief in his ability ultimately to perform is not a defense to a fraud charge, while the second declared that good faith, although ultimately unfulfilled, representations do not warrant a finding of guilty. The disputed element of fraud in question in both instructions is the often-litigated issue of fraudulent intent. Defendant contends that the trial court’s attempt
 
 *478
 
 to distinguish the nuances of intent resulted in reversible error.
 

 The standard of review in instructions cases is well established. As we have stated: “The question of whether a jury-has been properly instructed is to be determined not upon consideration of a single paragraph, sentence, phrase or word, but upon the charge as a whole.”
 
 United States v. Lang,
 
 644 F.2d 1232, 1240 (7th Cir.1981) (as modified),
 
 cert. denied,
 
 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174. In the present case, the trial court gave a number of instructions on the issue of intent. The first such instruction stated: “To ‘act with intent to defraud’ means to act willfully and with specific intent to deceive or cheat; ordinarily for the purpose of either causing some financial loss to another, or bringing about some financial gain to one’s self.” The court then defined “knowingly” as an awareness “of the nature of his conduct.” The honest belief instruction, the instruction that it was no defense that not all of defendant’s customers were defrauded, and the good faith instruction followed in order. After the good faith instruction, the court discussed defendant’s claim that he had relied in good faith on the advice of counsel and stated that, if defendant sought the advice in good faith, after revealing all material facts to the attorney, “and acted strictly in accordance with the advice ..., then the defendant would not be willfully doing wrong in omitting something that the law requires
 

 Defendant’s principal contention is that the instruction that defendant’s honest belief in his ability ultimately to perform his promises was not a defense obviates the effectiveness of the subsequent instruction that good faith is a defense. The difficulty in discerning the different shades of intent may stretch to the limit the jury’s ability to parse instructions, but these are perjinkities in which a trial court inevitably must engage, and we must assume that jurors are not hebetudinous. In the present case, the instructions given by the district court judge were accurate statements of the law and enunciated the critical distinction between an honest belief in ability ultimately to perform and good faith, although ultimately unfulfilled, representations. Furthermore, the instructions were highly relevant to the Government's burden to establish the intent element of the fraud charges.
 

 Defendant concedes that an instruction “that an honest belief that Defendant would ultimately deliver and install a scale, was not in itself a defense, would be an accurate statement of the-law,” although it might still prejudice defendant’s right to a good faith instruction. There is overwhelming case law in support of such an instruction.
 
 See, e.g., United States v. Preston,
 
 634 F.2d 1285, 1294-95 (10th Cir. 1980),
 
 cert. denied,
 
 455 U.S. 1002, 102 S.Ct. 1634, 71 L.Ed.2d 869 (1982);
 
 United States v. Beecroft,
 
 608 F.2d 753, 757 (9th Cir.1979);
 
 United States v. Diamond,
 
 430 F.2d 688, 691 (5th Cir.1970);
 
 Elbel v. United States,
 
 364 F.2d 127, 133 (10th Cir.1966),
 
 cert. denied,
 
 385 U.S. 1014, 87 S.Ct. 726,17 L.Ed.2d 550 (1967);
 
 Moore v. United States,
 
 2 F.2d 839, 842-43 (7th Cir.1924),
 
 cert. denied,
 
 267 U.S. 599, 45 S.Ct. 354, 67 L.Ed. 807 (1925). We see no legal distinction between such an instruction and the instruction actually given, which stated: “An honest belief by the Defendant that he will ultimately perform what he has promised is not itself a defense to the crimes charged.” Therefore, if we only viewed the instruction in isolation, there would be no basis for reversal as defendant does not assert that his honest beliefs were not an issue in the case.
 

 We must, of course, consider the allegedly erroneous instructions in light of the jury charge viewed as a whole.
 
 United States v. Johnson,
 
 605 F.2d 1025, 1027 (7th Cir.1979) (en banc),
 
 cert. denied,
 
 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). We note that the court gave the good faith instruction after the honest belief instruction. As the instructions unequivocally indicated, good faith is a complete defense to both mail and wire fraud.
 
 See, e.g., United States v. Martin-Trigona,
 
 684 F.2d 485,
 
 *479
 
 492 (7th Cir.1982) (mail fraud). Nonetheless, defendant claims that the honest belief instruction somehow negated the impact of the good faith instruction. In light of the fact that the rest of the intent charge concerned the good faith, as opposed to the honest belief, element of the intent instructions, it seems more likely that, if anything, the honest belief instruction would have been negated. We need not engage in such speculation. As the district court noted in the jury instruction conference, if there were no honest belief instruction, the jurors might absolve defendant if they concluded that he believed that he would ultimately be able to perform, despite the fact that he made knowing misrepresentations when he entered the agreements. The honest belief instruction properly negated any such potential jury misconception.
 

 As we have noted above, there was substantial evidence indicating that defendant was aware that his assurances of performance were impossible to fulfill when he made the assurances. Thus, regardless of whether he hoped that he would eventually be able to eliminate his backlog and satisfy all current commitments, his assurances were misrepresentations of fact when made, which is all the Government needed to establish to defeat defendant’s claim of good faith.
 

 We find no merit in defendant’s contention that the following instruction prejudiced his right to a fair trial: “It is no defense to the crimes charged that not all the persons with whom the Defendant dealt in his business were defrauded.” There is no requirement in the law or in logic that all persons with whom a defendant does business must be defrauded for the Government to establish a scheme to defraud. Contrary to defendant’s assertions, not even a strained reading of the tendered instruction compelled the jury to disregard testimony of satisfied customers. The charge merely instructed the jury that the evidence of satisfied customers did not, without more, dispose of the intent issue favorably to defendant. Without the disputed instruction, the jury may have concluded incorrectly from the mere existence of some satisfied customers that defendant lacked an intent to defraud.
 

 When we view the jury instructions in their entirety, we conclude that the trial court properly instructed the jury on the intent issue.
 

 V. CONDITIONS OF PROBATION
 

 Defendant’s position on appeal from the probation conditions is a tenuous one. He seeks to have at least one condition, and perhaps two, voided, but he vehemently opposes remand for resentencing if we agree with him that the conditions were unwarranted. Undoubtedly, his vehemence underscores a strong desire to avoid incarceration, an avenue of punishment well within the sentencing authority of the trial judge should we remand for a new sentence.
 
 See Berra v. United States,
 
 221 F.2d 590 (8th Cir.1955),
 
 affirmed on other grounds,
 
 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956). We note that “[a] defendant generally may reject probation and elect to have sentence imposed.”
 
 United States v. Mitsubishi International Corp.,
 
 677 F.2d 785, 788 (9th Cir.1982).
 
 See also Barnhill v. United States,
 
 279 F.2d 105, 106 (5th Cir.1960) (“In other words, [defendant] cling[s] to probation while seeking to welch on its price.”),
 
 cert. denied,
 
 364 U.S. 824, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960).
 

 The relevant statute allows a trial court to impose probation
 

 for such periods and upon such terms and conditions as the court deems best.... While on probation and among the conditions thereof, the defendant ... may be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had ....
 

 18 U.S.C. § 3651. The Supreme Court has recognized that the statute gives the sentencing judge “an exceptional degree of flexibility.”
 
 Burns v. United States,
 
 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932). Consequently, we generally “will review the actions of the district court
 
 *480
 
 only for an abuse of discretion.”
 
 United States v. McDonough,
 
 603 F.2d 19 (7th Cir.1979). Nonetheless, defendant’s first objection to the conditions of probation requires substantial scrutiny as it raises an issue of the scope of the authority granted to a sentencing court.
 

 We have discovered only one decision that addresses defendant’s argument that a discharge in bankruptcy precludes a district court from ordering restitution when a subsequent conviction involves debts covered by the discharge. In
 
 United States v. Carson,
 
 669 F.2d 216 (5th Cir. 1982), the court faced a situation virtually identical to the case now before us. Carson’s conviction for defrauding a bank resulted in probation, which included a requirement that he make restitution to the bank. Between the time of the fraud and the conviction, Carson was discharged in bankruptcy. The discharge order included the debt that he owed to the bank, which had failed to protect its rights in the bankruptcy proceeding. The Fifth Circuit stated that Carson’s argument that the discharge precluded subsequent restitution was “untenable on its face.”
 
 Id,
 
 at 217. Although the bank could no longer maintain a direct action against Carson after the discharge, the court noted that the discharge did not extinguish the bank’s loss; therefore, restitution was appropriate. Finally, the court stated: “If the principal aim of the probation condition were to make the bank whole, this argument might have some appeal. In fact, though, while recompense to the victim is a usually laudable consequence of restitution, the focus of any probation regimen is on the offender.”
 
 Id.
 

 While we might not be in full agreement with the Fifth Circuit’s analysis, its result seems eminently correct. The bankruptcy proceeding is largely unconcerned with criminality, and discharge may occur regardless of how the debtor has incurred his debts, especially in cases such as
 
 Carson
 
 and the present one where defrauded creditors fail to seek an order of non-discharge from the bankruptcy court. The “fresh start” envisioned by the imposition of probation conditions is entirely different from the one resulting from discharge in bankruptcy. Fundamental to the imposition of probation is the belief that its conditions will result in the rehabilitation of the probationer at no cost to the public safety.
 
 See, e.g., United States v. Mitsubishi International Corp.,
 
 677 F.2d at 788;
 
 United States v. Stine,
 
 675 F.2d 69 (3d Cir.1982), ce
 
 rt. denied,
 
 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373;
 
 United States v. Tonry,
 
 605 F.2d 144, 147-48 (5th Cir.1979). The trial judge specifically noted “that restitution is a critical element of the rehabilitation process that I think has to occur in this case.” Although imposition of a fine may have the same
 
 pecuniary effect
 
 as restitution on the probationer, the
 
 rehabilitative effect
 
 may well be augmented by the act of making one’s victims whole. We discern nothing in the bankruptcy code that evinces a congressional intent to prevent sentencing judges from imposing such potentially rehabilitative probation conditions. Thus, we reject defendant’s statutory argument.
 

 In the alternative, defendant argues that the combination of the restitution order with the condition that defendant not maintain a proprietary interest in any scale business effectively deprives him of any means of meeting his restitutionary obligations. Defendant does not maintain that a district court is without power to impose a condition that prevents a probationer from certain types of gainful activity. Indeed, all authority that we have discovered approves of such a restriction.
 
 See, e.g., United States v. Villarin Gerena,
 
 553 F.2d 723, 727 (1st Cir.1977);
 
 Malone v. United States,
 
 502 F.2d 554, 556-57 (9th Cir.1974),
 
 cert. denied,
 
 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975);
 
 Whaley v. United States,
 
 324 F.2d 356 (9th Cir.1963),
 
 cert. denied,
 
 376 U.S. 911, 84 S.Ct. 665, 11 L.Ed.2d 609 (1964);
 
 Stone v. United States,
 
 153 F.2d 331, 333 (9th Cir.1946). Other probation conditions previously upheld by the courts of appeals include a prohibition against holding union office during the probationary period,
 
 Berra v.
 
 
 *481
 

 United States,
 
 221 F.2d at 598, a prohibition from running for state or federal office and from engaging in political activity,
 
 United States v. Tonry,
 
 605 F.2d at 151, an order compelling psychological counseling,
 
 United States v. Stine,
 
 675 F.2d at 72, preventing the probationer from participating in a variety of associational activities,
 
 Malone v. United States,
 
 502 F.2d at 557, and, forfeiture of accumulated pension plan benefits,
 
 United States v. Margala,
 
 662 F.2d 622, 627 (9th Cir.1981). The condition in the present case — a prohibition against the maintenance of an ownership interest in a scale business — implicates interests no more compelling than those involved in the decided cases. Therefore, the judge should not be restricted to any greater degree in fashioning a probation regimen.
 

 Defendant also complains that the ownership restriction prevents him from making enough money to satisfy the restitution order. We will not alter a district court’s discretionary decision to impose a restriction merely because a probationer might not be able to fulfill other probation conditions. The district court did not prevent defendant from obtaining employment in the scale business. Although defendant’s age may make him less employable than a similarly situated younger person, nothing suggests that he will be unable to obtain any job in the field. Even if he is unable to obtain another job, if he makes good faith efforts to satisfy the restitution condition, the district court cannot automatically revoke probation based upon the technical violation of probation conditions.
 
 Bearden v. Georgia,
 
 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). Consequently, we find no abuse of discretion in either of the two contested probation conditions, considered separately or together.
 

 IV. CONCLUSION
 

 We have considered all the arguments of defendant and we find them to be without merit. Accordingly, defendant’s conviction and the probation conditions imposed pursuant thereto are
 

 Affirmed.