UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel K. DUNN, Sr., Defendant–
Appellant.

No. 91–1221.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 18, 1991.

Decided April 9, 1992.

Robert E. Lindsay, Karen Quesnel, argued, Dept. of Justice, Tax Div., Appellate Section, Andy Kameros, Alan Hechtkopf, U.S. Dept. of Justice, Tax Div., Washington, D.C., for U.S.

Arthur M. Lerner, argued, Lerner & Kirchner, Champaign, Ill., for Daniel K. Dunn, Sr.

Before POSNER, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury found Daniel K. Dunn, Sr., guilty of 18 counts of mail fraud, in violation of 18 U.S.C. § 1341, fifteen counts of aiding and assisting in the preparation and presentation of false income tax returns, in violation of 26 U.S.C. § 7206(2), two counts of failing to file his income tax returns, in violation of 26 U.S.C. § 7203, and two counts of income tax evasion, in violation of 26 U.S.C. § 7201. The district court sentenced Dunn to a total of five years imprisonment.

In 1979, Dunn began soliciting investors for his company, Perlite Developers, Inc., ("PDI"), which sold insulation made from volcanic ash, or perlite. Dunn told prospective buyers that an investment in PDI would earn a high rate of return, was secure because it was backed by precious metals, and would result in a tax benefit. More specifically, from 1983 to 1986, Dunn promoted his company by stating that an investment in PDI would produce a 30 percent rate of return each year. In reality, PDI had reported a loss on its corporate income tax returns for 1981 and 1982, and by 1983 its business fortunes were in a steady decline.

Dunn told interested persons that an investment in PDI would be tax deductible because they would qualify as distributors of PDI's perlite. Nevertheless, Dunn did not require investors to actively engage in the sale of PDI insulation.

After purchasing an interest in PDI, an investor would begin to receive monthly statements prepared by Dunn. The statements generally reflected an annual rate of return on the investor's accounts of between 29 and 30 percent. Dunn also prepared for the investors Internal Revenue Schedules C, which purportedly detailed the results of their investments for income tax purposes. The Schedules C asserted that the investors were wholesale distributors of insulation, even though the investors had not made any of the sales or purchases listed. The Schedules C also greatly overstated the actual receipts and cost of goods sold for PDI.

Throughout the period from 1981 to 1986 Dunn used PDI funds to pay his personal expenses, but he did not declare those funds as income on his own federal tax returns. In 1984 and 1985, Dunn did not even file personal income tax returns.

By March, 1986, Dunn realized that neither he nor PDI had any remaining funds. Shortly thereafter, he sent a letter to the investors in which he informed them that due to changes in the tax code they would lose their tax deductions if they withdrew money from their PDI accounts. Dunn did not tell the investors that neither he nor PDI had any of their money.

In May 1986, Dunn sent a notice to the investors, in which he discontinued their PDI contracts but promised to transfer PDI investments to precious metal certificates yielding 10 percent interest per year. The investors never received any of the precious metal certificates. It is also clear from the record that neither Dunn nor PDI owned any precious metal with which to redeem the certificates.

Shortly thereafter, when investigators from the IRS and other governmental agencies began to investigate Dunn, he received an IRS summons and a grand jury subpoena to produce PDI records. Dunn did not produce the records, but instead claimed that they had been stolen in a burglary. The government introduced testimony by Pamela Dunn, Daniel Dunn's daughter, that she overheard her father planning the break-in with his son Dan, Jr.

■ Dunn first challenges his mail fraud convictions on the ground that the individual mail fraud counts of the indictment were time barred and should have been dismissed because the indictment was not returned by the grand jury within the five year statute of limitations for mail fraud. *See* 18 U.S.C. § 3282. In a mail fraud case, the statute of limitations runs from the date of the mailings. *United States v. Eckhardt*, 843 F.2d 989, 993 (7th Cir.), *cert. denied*, 488 U.S. 839, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988); *United States v. Read*, 658 F.2d 1225, 1240 (7th Cir.1981).

The grand jury returned the indictment in this case on June 28, 1990, while the earliest mailing charged in the individual mail fraud counts was alleged to have occurred on or about September 1, 1985. Thus, all of the mailings which formed the basis for the mail fraud counts fell within the five year statute of limitations.

■ In the alternative, Dunn argues that the district court erred in failing to give his proposed instruction on the statute of limitations. At trial, the government claimed that Dunn had committed fraudulent acts from 1982 onwards, although Dunn was not indicted until 1990. Before the jury retired Dunn tendered an instruction which read: "The government must prove beyond a reasonable doubt that the defendant did an act in furtherance of the scheme after June 20th, 1985." The district court rejected this instruction.

Dunn is correct that the government was required to prove that his mailings during and after 1985 were part of a general scheme to defraud. The government contends that a separate instruction was not necessary to convey this requirement to the jury. As the government points out, the district court specifically instructed the jury that it could not find Dunn guilty on the mail fraud counts unless it found that he devised a scheme to defraud, and "for the purpose of carrying out the scheme or attempting to do so, [Dunn] used the United States mails or caused the United States mails to be used *in the manner charged in the particular count.*" (Emphasis added). The jury found Dunn guilty on all the mail fraud counts. In doing so, the jury necessarily found that the mailings occurred as charged in the individual counts and that each mailing was in furtherance of Dunn's scheme to defraud the PDI investors.

■ Dunn next argues that the district court's supplemental instruction to the jury on the mail fraud counts after his lawyer's closing argument deprived him of a fair trial. The district court stated: "[i]f you find that the Defendant acted with an intent to defraud, as I have defined it, then it is no defense that the Defendant believed that PDI would eventually succeed...."

To prove a mail fraud the government must show that the defendant participated in a scheme to defraud and that he acted with intent to defraud. *United States v. Martin–Trigona*, 684 F.2d 485, 492 (7th Cir.1982). Good faith, or the absence of an intent to defraud, constitutes a complete defense to a charge of mail fraud. *Id.* The good faith defense requires "a genuine belief that the information being sent or given is true." *United States v. Preston*, 634 F.2d 1285, 1294 (10th Cir.1980), *cert. denied*, 455 U.S. 1002, 102 S.Ct. 1634, 71 L.Ed.2d 869 (1982). In *United States v. Alexander*, 743 F.2d 472 (7th Cir.1984), a mail fraud case, we approved an instruction that "[a]n honest belief by the Defendant that he will ultimately be able to perform what he has promised is not in itself a defense to the crimes charged." *Id.* at 478 (noting that "there is overwhelming case law in support of such an instruction"); *see also Preston*, 634 F.2d at 1294. Therefore, we hold that the district court's instruction was entirely proper.

Nor is *United States v. Cheek*, —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1990), to the contrary. In *Cheek*, the Supreme Court held that the standard for statutory willfulness in criminal tax prosecutions is the "'voluntary, intentional violation of a known legal duty.'" *Id.* at ——, 111 S.Ct. at 610 (quoting *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976)). The Court went on to hold that a defendant's claimed good-faith belief need not be objectively reasonable. *Id.* at ——, 111 S.Ct. at 611. The defen-

dant in *Cheek* asserted that "he believed in good faith that the income tax law is unconstitutional as applied to him and thus could not legally impose any duty upon him." *Id.* at ——, 111 S.Ct. at 612.

Here we have a different situation. To prove the specific intent element of a violation of the mail fraud statute, the government must prove that the defendant has knowingly made a "material misrepresentation or omission." *United States v. York,* 933 F.2d 1343, 1349 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991); *see United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir.1979). Dunn's good faith belief that PDI would be successful in the long-term was not relevant to the element of specific intent because that belief did not negate the falsity of the misrepresentations or his knowledge that the statements were false when made.

 We also reject Dunn's sufficiency of the evidence challenge to his mail fraud convictions. Dunn argues that his acts did not constitute mail fraud because the investors were not solicited by mail and that the mailings were not necessary parts of the scheme. This argument incorrectly states the law of mail fraud. "To convict a defendant of mail fraud, the government must prove that the defendant participated in a scheme to defraud and caused the mails to be used in furtherance of that scheme." *United States v. Lennartz,* 948 F.2d 363, 370 (7th Cir.1991); *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986). There is no requirement that the mailings themselves be fraudulent. *United States v. Feinberg,* 535 F.2d 1004, 1009 (7th Cir.), *cert. denied,* 429 U.S. 929, 97 S.Ct. 337, 50 L.Ed.2d 300 (1976); *United States v. Reid,* 533 F.2d 1255, 1263 (D.C.Cir.1976). Moreover, viewing the evidence in the light most favorable to the government, *Alexander,* 743 F.2d at 475, we conclude that the evidence of Dunn's numerous violations of the mail fraud statute was clearly sufficient.

 Dunn also objects to his convictions for the preparation of false and misleading tax returns. He argues that under *Cheek* he cannot have acted willfully as a matter of law because he consulted two attorneys, one of whom was also a C.P.A., in preparing the Schedules C.

To establish a violation of 26 U.S.C. § 7206(2), the government must prove, *inter alia,* that the defendant acted willfully. *United States v. Hooks,* 848 F.2d 785, 788–89 (7th Cir.1988). Once again, viewing the evidence in the light most favorable to the government, *Alexander,* 743 F.2d at 475, we conclude that the evidence was sufficient to establish that Dunn acted willfully. There was overwhelming evidence in the record that Dunn knew that the Schedules C he prepared for the investors were false. Dunn knew that the investors did not act as distributors of perlite, although he listed them as distributors in the schedules.

 We note that Dunn did not attempt to prove the elements of a reliance on counsel defense. *See United States v. Benson,* 941 F.2d 598, 613–15 (7th Cir.1991); *United States v. Smith,* 523 F.2d 771, 778 (5th Cir.1975), *cert. denied,* 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976) ("The reliance defense, to be effective, must establish good faith reliance on an expert coupled with full disclosure to that expert."). Indeed, Dunn did not testify as to what he told the attorneys about PDI and what they told him about the Schedules C. Moreover, the jury was entitled to discredit evidence that Dunn relied on two attorneys. *See Cheek,* —— U.S. at ——, 111 S.Ct. at 611 ("Knowledge and belief are characteristically questions for the factfinder, in this case the jury."). We hold that evidence that Dunn consulted two attorneys in preparing the Schedules C does not negate willfulness as a matter of law.

Therefore, we AFFIRM the convictions of Daniel K. Dunn, Sr.