In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 15-2477 & 15-2485

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EGAN MARINE CORPORATION and DENNIS MICHAEL EGAN,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 10 CR 33 — **James B. Zagel**, *Judge.*

ARGUED DECEMBER 5, 2016 — DECIDED DECEMBER 12, 2016

Before EASTERBROOK and ROVNER, *Circuit Judges*, and
SHADID, *District Judge.*[*]

EASTERBROOK, *Circuit Judge*. Barge EMC-423 exploded on
January 19, 2005, while under way between Joliet and Chica-
go with a cargo of clarified slurry oil. The blast threw deck-
hand Alex Oliva into the water; he did not survive. Contend-

[*] Of the Central District of Illinois, sitting by designation.

ing that Dennis Egan, master of the tug Lisa E that had been pushing the barge, had told Oliva to warm a pump using a propane torch, the United States obtained an indictment charging Egan and the tug's owner (Egan Marine Corp.) with violating 18 U.S.C. §1115, which penalizes maritime negligence that results in death, plus other statutes that penalize the negligent discharge of oil into navigable waters.

After a bench trial, Judge Zagel found that the prosecution had established, beyond a reasonable doubt, that Egan gave the order to Oliva, that the torch caused the explosion, that Oliva died as a result, and that the barge released oil as a further result. That such an order, if given, was negligence (or worse) no one doubted; open flames on oil carriers are forbidden by Coast Guard regulations and normal prudence. The court sentenced Egan to six months' imprisonment, a year's supervised release, and restitution of almost $6.75 million. Egan Marine was placed on probation for three years and ordered to pay the same restitution, for which it and Egan are jointly and severally liable.

The criminal prosecution was the second trial of these allegations. Two years before the grand jury returned its indictment, the United States had filed a civil suit against Egan Marine seeking damages on the same theory: that Egan directed Oliva to warm the pump using a torch, whose flame caused an explosion, a death, and an oil spill. That case, too, went to a bench trial. And Judge Leinenweber, who heard the evidence, determined that the United States had not proved its claim. 2011 U.S. Dist. LEXIS 138087 (N.D. Ill. Oct. 13, 2011) at *11 ("the Government did not prove, by a preponderance of the evidence, that Alex Oliva was using a propane torch on the cargo pump of the EMC 423 at the time

of the incident"). The United States did not appeal from that adverse decision but instead pressed forward with this criminal prosecution.

Egan and Egan Marine sought the benefit of issue preclusion (collateral estoppel), arguing that the United States should not be allowed to contend that they are guilty beyond a reasonable doubt after Judge Leinenweber found that the proof did not show culpability even by a preponderance of the evidence. But Judge Zagel rejected this contention.

The Supreme Court has said that the outcome of a civil case has preclusive force in a criminal prosecution. See *Yates v. United States*, 354 U.S. 298, 335–36 (1957). (*Burks v. United States*, 437 U.S. 1 (1978), overruled a different portion of *Yates* relating to double jeopardy; *Burks* did not question the portion of *Yates* dealing with preclusion.) If the United States cannot prove a factual claim on the preponderance standard, it cannot logically show the same thing beyond a reasonable doubt. The prosecutor maintains that this statement in *Yates* was dictum, but we do not think that characterization appropriate. It was integral to the Court's rationale—for although the Justices proceeded to conclude that the civil suit did not block the Yates prosecution under ordinary principles of preclusion, it would not have undertaken that exercise had the Court believed issue preclusion categorically inapplicable to the civil–criminal sequence.

*United States v. Weems*, 49 F.3d 528 (9th Cir. 1995), and *United States v. Rogers*, 960 F.2d 1501 (10th Cir. 1992), both took *Yates* at face value and held that a criminal prosecution can be blocked by the preclusive effect of a decision in a civil case. No court of appeals has held otherwise. But the United States maintains, and Judge Zagel concluded, that our deci-

sion in *United States v. Alexander*, 743 F.2d 472 (7th Cir. 1984), means that preclusion is unavailable notwithstanding *Yates*.

*Alexander* held that the outcome of an *administrative* proceeding cannot be invoked to block the resolution of a criminal indictment. The opinion observed that many administrative systems are designed to be informal and expeditious, and that when the agency loses an administrative adjudication it may not be entitled to judicial review. 743 F.2d at 477. Making the administrative process reliable enough to justify preclusive effect in a criminal prosecution might require a substantial investment of prosecutorial resources—if that were even possible under the statute in question. The United States' alternative might be to forego the administrative proceeding, which could have bad consequences of its own.

When using these considerations of public policy to decide whether to give preclusive effect to administrative adjudications, *Alexander* drew on *Standefer v. United States*, 447 U.S. 10 (1980), which had concluded that it would be unwise to apply nonmutual preclusion from one criminal prosecution to another. Standefer and Niederberger had been charged with joint criminal activity. Niederberger was tried first and acquitted; Standefer maintained that he was entitled to the benefit of that adjudication, because it takes two to tango. The Court held not, observing (447 U.S. at 21–23) that nonmutual preclusion (that is, using the result in A's case to determine the result in B's) is designed largely to reduce litigation costs in civil suits, while the criminal process has different and more important goals. The Justices added that acquittals in criminal prosecutions are unreasoned and cannot be reviewed (given the Double Jeopardy Clause); they may reflect compromise or misunderstanding rather

than a determination of contested facts. That's why inconsistent verdicts within a single criminal prosecution do not work in a defendant's favor. See, e.g., *Bravo-Fernandez v. United States*, No. 15–537 (U.S. Nov. 29, 2016).

*Standefer* did not cast doubt on *Yates*. The considerations that led the Court to abjure nonmutual preclusion in the criminal–criminal sequence do not pertain to mutual preclusion in the civil–criminal sequence. Many a civil decision is fully explained (as Judge Leinenweber's was), and all are reviewable on appeal. The Supreme Court understands mutual preclusion not just as a judicial work-saving device but as a matter of right for the litigants involved. See, e.g., *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981).

This is so even when one of the litigants is the United States. See, e.g., *Montana v. United States*, 440 U.S. 147 (1979); *United States v. Stauffer Chemical Co.*, 464 U.S. 165 (1984). The prosecutor's brief in our case tells us that allowing Judge Leinenweber's decision to foreclose the criminal charges would cause the United States either to pour extra resources into civil suits, disrupting its litigation strategy, or to forego or postpone such suits pending the outcome of criminal cases. Similar arguments were made by the Solicitor General in *Montana* and *Stauffer Chemical*, where the United States maintained that the outcome of a poorly litigated civil case (perhaps pursued by a single Assistant United States Attorney in some remote outpost) should not be allowed to block a new suit that has the Department of Justice's full attention and may be designed to serve a vital public goal. But the Justices had none of this. They concluded that ordinary rules of preclusion apply to the United States and that the Department of Justice must navigate around established legal rules,

rather than the rules giving way to bureaucratic convenience. (The Court made an exception for offensive nonmutual issue preclusion in *United States v. Mendoza*, 464 U.S. 154 (1984), again reflecting *Standefer*'s conclusion that nonmutual preclusion is a matter of wise policy rather than of litigants' entitlements.)

There is of course a potential for nonmutuality in the civil–criminal sequence—but it is the United States that prefers a situation in which it can win but not lose. The United States filed the civil suit seeking damages and hoped to enjoy the fruits of victory. But it tells us that a loss meant little, because after losing it could pursue the criminal prosecution and ask a different judge or jury to reach a different outcome. The principal stakes in both the civil and criminal cases are money. Six months in prison are not to be sneezed at, but the main contest has been about recompense for Oliva's death and the oil released from the barge. What would have been labeled "damages" in the civil case is called "restitution" in the criminal case, but the money covers the same losses either way. And had the criminal case gone to trial first and defendants been acquitted, the United States doubtless would be arguing that it could still pursue civil remedies because of the different burdens of persuasion. See, e.g., *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 234–35 (1972); *Helvering v. Mitchell*, 303 U.S. 391, 397–98 (1938).

Every litigant would like multiple chances to win; that's what the United States is claiming, while it contends that for Egan and Egan Marine any one loss would be dispositive (at least for financial issues). And, by bringing the civil case first, the United States received the benefit of civil discovery, which is more extensive than that allowed in criminal prose-

cutions by Fed. R. Crim. P. 16—discovery that it could put to use in the criminal case as well as the civil one. We understand why the United States seeks these advantages but do not think it entitled to them, without the detriment of being bound by the civil judgment if it loses. If it fails to show some fact in the civil suit by a preponderance of the evidence, it is precluded from trying to show the same thing beyond a reasonable doubt.

Judge Zagel stated that, even if issue preclusion applies in the civil–criminal sequence (as we have concluded it does), he would exercise discretion not to use that doctrine in this prosecution. He did not say where that discretion comes from or address the significance of decisions such as *Federated Department Stores* that reject judicial efforts to treat rules of preclusion as dispensable whenever judges prefer another outcome. See 452 U.S. at 399–402.

Normal rules of preclusion have some flex. For example, "[a] new determination of the issue [may be] warranted by differences in the quality or extensiveness of the procedures followed in the two courts". *Restatement (Second) of Judgments* §28(3). In other words, if the first forum's procedures do not conduce to sufficiently reliable decisions, the second forum may decide that it is best to determine the issue anew. This is what *Alexander* said about the difference between administrative adjudication and criminal litigation. But Judge Zagel did not conclude that Judge Leinenweber had conducted the civil trial unreliably or that any of the other exceptions in *Restatement* §28 had been established; he simply announced that he would disregard the civil judgment because that course seemed best to him. That's not an appropriate way to treat the outcome of a properly conducted federal civil trial.

Egan Marine was the only defendant in the civil suit. The United States maintains that Egan therefore cannot receive the benefit of the judgment, which it sees as the sort of non-mutual issue preclusion forbidden by *Standefer*. (The United States also contends that Egan forfeited his entitlement to the benefit of issue preclusion, but he preserved his position by telling the district court that he was adopting Egan Marine's arguments on issue preclusion.)

*Standefer* used the word "nonmutual" to refer to the use of preclusion across different persons, so that A's victory over C in one case would imply B's victory over C in another. But the law of preclusion has long recognized that if A and B are in a contractual relation ("in privity" as judges often say) then they are entitled to the same treatment under normal principles of mutual preclusion. Egan and Egan Marine were in such a relation. Indeed, in the civil suit the United States contended that Egan Marine was vicariously liable for Egan's acts precisely because of their employment relation. The civil suit was about Egan's conduct, which was attributed to his employer, and Judge Leinenweber's core finding (which we quoted earlier) was that the United States had not shown that Oliva was using a propane torch at all, let alone that in using a torch he was following Egan's directive. When a court rejects a claim of vicarious liability based on a worker's conduct, the worker is as much entitled to the benefit of that judgment as is the employer. *Muhammad v. Oliver*, 547 F.3d 874 (7th Cir. 2008); *Restatement* §51. Cf. *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008) (canvassing situations in which a nonparty gets the benefit of a judgment). Having argued in the civil suit that Egan Marine was liable for Egan's conduct, the United States cannot now treat Egan and the corporation as strangers to each other.

Another way to see this is to recall that *Standefer* dealt with considerations unique to nonmutual preclusion in criminal litigation: acquittals are unexplained and unreviewable on appeal. Judge Leinenweber's decision, by contrast, was accompanied by an opinion and reviewable in this court—though the United States chose not to appeal. It is much easier to see why a reviewable civil finding that X has not been shown by a preponderance of the evidence should foreclose a contention that X is true beyond a reasonable doubt than it is to carry one criminal acquittal over to a different case.

Because both Egan and Egan Marine are entitled to the benefit of the civil judgment, we need not discuss any of the remaining issues. The convictions are reversed, and the case is remanded for the entry of judgments of acquittal.