65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David Wellington LEE, Defendant-Appellant.
 No. 94-2204.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1995.
 
 Before: WELLFORD, NELSON, and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 The defendant, David Lee, appeals from his conviction, following a bench trial, of nine counts of mail fraud and aiding and abetting mail fraud, in violation of 18 U.S.C. Sec. 2 and 18 U.S.C. Sec. 1341. Lee's appeal raises only one assignment of error: Whether the district court erred in finding Lee guilty because the government presented insufficient evidence to prove Lee's guilt beyond a reasonable doubt.
 
 
 2
 Because we conclude that the district court's factual findings are sufficient to support the conviction and are not clearly erroneous, we affirm Lee's conviction.
 
 I.
 
 3
 In 1986, Lee formed a partnership with Michael Southen and Gary Baker. This partnership, known as SBL, was formed for the purpose of developing a piece of commercial property in Ann Arbor to be called Concord Center. Lee's role was primarily as an investor. Southen performed the actual management of the partnership. The partners' plan was to finance the development with a construction loan. In addition, Lee put in $400,000 as "seed money." For various reasons the approval of the construction loan was delayed, despite which the partners decided to begin construction on the project.
 
 
 4
 In early 1987, the construction loan was still being delayed, and the project desperately needed an infusion of money. The partners eventually put together a plan to solicit private investments through limited partnerships. The first such limited partnership was formed in July 1987 and was called 1497 Maple Lane. Southen put together a prospectus which alleged that investments in the limited partnership would be secured by a second mortgage on Lee's commercial property located at 1497 Maple Lane, Troy, Michigan. The district court made a factual finding that Lee led Southen to believe that Lee would execute a second mortgage on this property. Lee and his wife executed a second mortgage, but Lee directed Southen not to record this mortgage.
 
 
 5
 Two more limited partnerships were formed in a similar manner: 1495 Maple Way Limited Partnership in March 1988, and Maple Way II Associates in June 1989. Each limited partnership was to be secured by a second or third mortgage on Lee's commercial property at 1495 Maple Way. However, Lee refused to execute a second mortgage on this property to support the 1495 Maple Way Limited Partnership. The following year, however, Lee did execute and record a second mortgage on 1497 Maple Lane in favor of Comerica Bank as security for a $400,000 loan. Lee also executed and recorded a second mortgage on 1495 Maple Way in favor of Midwest Guaranty as security for a $315,000 loan.
 
 
 6
 At about the same time, the SBL partners sent a letter to all the investors which stated that SBL was experiencing a "cash flow" problem, but reminded the investors that the investments were "collateralized by substantial assets, i.e., commercial real estate properties." Two months later, Lee wrote to the investors, detailing the progress SBL was making toward resolving its debt problems. This letter referred to "existing properties which secure partnership loans." The next month, the partners sent a letter to each investor inviting the investors to "please remember that the security for the partnership loan is the commercial real estate pledged as collateral."
 
 
 7
 Eventually everyone involved in these investments lost all of their money. Concord Center was taken by the lender of the construction loan. The first mortgagees took all of Lee's other commercial property.
 
 
 8
 Upon receiving complaints from some of the investors who had lost everything, postal inspectors began to investigate the dealings of SBL. In exchange for the promise of cooperation, Southen was allowed to plead guilty to one count of mail fraud. Lee was then indicted on nine counts of mail fraud and aiding and abetting mail fraud. Lee pleaded not guilty and a five-day trial was conducted before the district court without a jury. Southen was the government's primary witness. Lee did not testify on his own behalf. The government submitted numerous documents relating to the various limited partnerships as exhibits.
 
 
 9
 The district court found Lee guilty on all nine counts. The court specifically found that Lee knowingly made false statements regarding his intention to provide mortgages as security for the partnerships and knowingly made false statements regarding the existence of security for the investments.
 
 
 10
 The presentence report calculated a sentence range of thirty to thirty-seven months imprisonment. The district court departed downward, sentencing Lee to twelve months imprisonment. The district court also ordered Lee to pay $880,000 restitution. Neither the government nor Lee has appealed this sentence.
 
 II.
 A.
 
 11
 This court has outlined the standards applicable to a defendant's challenge to the sufficiency of the evidence against him when he is tried by the court without a jury. This court stated:
 
 
 12
 We review the defendant's insufficiency of the evidence claim by examining "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Even when a defendant is convicted after a bench trial, the test is "whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the defendant was guilty." We must resolve all conflicts in the testimony in the government's favor and draw every reasonable inference from the evidence in favor of the government. Specific findings of the trial court are reviewable under the "clearly erroneous" standard.
 
 
 13
 United States v. Bashaw, 982 F.2d 168, 171 (6th Cir.1992) (citations omitted).
 
 
 14
 The three elements necessary to prove mail fraud under 18 U.S.C. Sec. 1341 are: "(1) the existence of a scheme to defraud, (2) which involves the use of the mail, or of wire transmissions, (3) for the purpose of executing the scheme." United States v. Merklinger, 16 F.3d 670, 678 (6th Cir.1994).
 
 B.
 
 15
 First, Lee argues that there was no "scheme" to defraud the investors. He argues that he "reaped no rewards in the midst of this failing enterprise" and there were no "badges of fraud." Southen's testimony clearly establishes a "scheme" within the meaning of 18 U.S.C. Sec. 1341. Under the version of facts the district court found credible, Lee took numerous steps over a period of nearly two years to establish and perpetuate the facade that had been created; that is, that the limited partnerships were safe investments fully secured by mortgages on Lee's property.
 
 
 16
 Lee's second argument is that the government failed to show he had the intent to harm the investors. The district court found that Lee did not intend that the investors would lose their money and that he intended to repay the loans. To prove mail fraud, the requisite intent is the intent to harm the defrauded person. In United States v. D'Amato, 39 F.3d 1249 (2nd Cir.1994), the court stated that the government must prove "that some actual harm or injury was contemplated by the schemer." Id. at 1257 (citation omitted). Lee's position is that this contemplated "harm" must be the contemplation that the victim will lose his money. Thus, Lee reasons, because he intended to repay the investors, as a matter of law he did not have the requisite "intent to defraud." This view is based on a false premise and has long been rejected by federal courts.
 
 
 17
 A nearly identical argument was rejected by this court as early as 1915 in Bettman v. United States, 224 F. 819 (6th Cir.), cert. denied, 239 U.S. 642 (1915). There, a corporation had obtained a large loan against its commercial paper by falsely overstating its solvency. The defendant, the president of the corporation, argued that because the corporation was solvent, but less solvent than it had represented to the investors, there was no intent to defraud. This is essentially the same argument that Lee makes here: the intent to defraud must be the intent to take the victim's money and give nothing in return. In rejecting this argument, the Bettman court stated:
 
 
 18
 It is not necessary to criminality under the act that nothing whatever is to be given in return for the money received.... In our opinion the purchasers of the paper in question were defrauded within the meaning of the law; that is to say, they were injured when the possession of their money was obtained by materially false representations of the financial worth of the borrower, and such purchasers thereby subjected to substantial risk of failure to recover back their money.
 
 
 19
 Id. at 827 (citations omitted). This position is still maintained by the federal courts. See, e.g., United States v. Fischl, 797 F.2d 306 (6th Cir.1986); see also, United States v. Dunn, 961 F.2d 648, 650-51 (7th Cir.1992); United States v. Saks, 964 F.2d 1514, 1519 (5th Cir.1992); United States v. Lemons, 941 F.2d 309, 315-16 (5th Cir.1991).
 
 
 20
 The government need not show that Lee intended to obtain the victim's money under false pretenses and then flee without providing anything in return. The government need only prove that Lee intended to "harm" the victims. It is sufficient "harm" for purposes of conviction under 18 U.S.C. Sec. 1341 to intend, as Lee did, that the schemer obtain the victims' money under the false representation that the investments were more secure than they actually were. The "harm" or "injury" that the investors suffered was that they were exposed to greater risk than that to which they believed they would be exposed. This "harm" is sufficient to support Lee's conviction under Sec. 1341. Lee's legal arguments as to what the government must prove under the mail fraud statute are patently mistaken.
 
 
 21
 We emphasize, however, that negligence, even "serious" negligence, and breach of contract cannot form the basis of a mail fraud prosecution. See, e.g., D'Amato, 39 F.3d at 1261 n. 8 (A breach of contract does not amount to mail fraud."); McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir.) ("Nor does a breach of contract in itself constitute a scheme to defraud."), cert. denied, 498 U.S. 992 (1990). The mail and wire fraud statutes apply only when a promisor enters into an agreement knowing that he does not intend to perform under the agreement. United States v. Paccione, 949 F.2d 1183, 1196 (2d Cir.1991), cert. denied, 112 S.Ct. 3029 (1992). Where a promisor enters into a contract or loan agreement intending to perform, the promisor's subsequent nonperformance is the predicate for civil liability, not criminal culpability under the mail and wire fraud statutes. In this case, however, Southen's testimony provided sufficient evidence to support the district court's conclusion that Lee entered into the loan agreements without the intention of providing the security promised to the limited partnerships.
 
 
 22
 In summary, the district court's findings are not clearly erroneous and provide ample evidence to support Lee's conviction.
 
 III.
 
 23
 For the reasons stated above, Lee's conviction for mail fraud and aiding and abetting mail fraud under 18 U.S.C. Sec. 1341 and Sec. 2 are AFFIRMED.