In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1433

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MOHAMMED MABROOK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 CR 271—**George W. Lindberg**, *Judge.*

ARGUED JUNE 4, 2002—DECIDED AUGUST 15, 2002

Before COFFEY, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Mohammed Mabrook was convicted of mail and wire fraud after he convinced his friends and associates to invest over one million dollars in a business he knew was failing. He now appeals arguing that the district court abused its discretion in making the various contested trial rulings; and that it erred in imposing sentence. We disagree and affirm.

## I. BACKGROUND

Mabrook owned Global Chemical, a small company in the business of selling a chlorine substitute for swimming pools,

Oxydyne. Mabrook hired Ioanis Paneras to be the company's national sales manager. Paneras, a con man, quickly began attracting business using false claims, documents, and promises. Mabrook was using the same methods to lure investors.

Mabrook convinced three individuals to invest over one million dollars in Global Chemical using false purchase orders and financial statements and exploiting friendships and associations. Once he had the money, he needed to quell concerns about the investments. Mabrook repeatedly assured the men that the Oxydyne shipments would be sent, but that he first had to wait for EPA approval.

Eventually the house of cards began to fall. Paneras was convicted of defrauding the distributors he recruited, and for other crimes as well. He began giving the government information about Global Chemical and Mabrook. Mabrook was eventually convicted after a jury trial, and although Paneras did not testify at trial, the evidence Paneras gave to the authorities was instrumental in Mabrook's conviction.

## II.  ANALYSIS

### A.  The District Court Did Not Abuse Its Discretion at Trial

#### 1.  No Sixth Amendment Violation

Mabrook argues that the district court denied him a fair trial when it allowed Paneras, who had already been convicted for mail and wire fraud, to assert his Fifth Amendment privilege, a finding we review for an abuse of discretion. *United States v. Kaufmann*, 985 F.2d 884, 898 (7th Cir. 1993). When a potential witness indicates that he will likely invoke his privilege against self-incrimination, the district court should ensure that the witness cannot possibly incriminate himself. If a witness's testimony may make him vulnerable to prosecution, the trial

court may allow him to invoke his privilege and refuse to testify. *Gleason v. Welborn*, 42 F.3d 1107, 1109 (7th Cir. 1994). In deciding whether the district court abused its discretion in denying Mabrook's request to call Paneras as a witness and allowing Paneras to invoke the Fifth Amendment, we must remain mindful that Mabrook's Sixth Amendment right to the compulsory process does not trump Paneras's Fifth Amendment right against self-incrimination. *Id.*

First, Mabrook argues that the district court should have permitted him to question Paneras about matters outside the statute of limitations. However, after conducting a hearing, the district court found that Paneras would not be insulated from state or federal prosecution if he testified. In fact, the very real possibility existed that Paneras would expose himself to conspiracy, RICO, or 18 U.S.C. § 1001 charges if he testified at Mabrook's trial. Thus, even though Paneras had already been prosecuted for mail and wire fraud, the possibility that other charges, like conspiracy, could be brought against Paneras based on his testimony weighs heavily in determining whether the court abused its discretion. *Cf. United States v. Pardo*, 636 F.2d 535, 544 n.24 (D.C. Cir. 1980) (had the government suggested that the witness faced conspiracy charges, then a strong case would have been made for either granting immunity or dismissing the charges against the defendants).

Mabrook also claims that Paneras should have taken the stand and asserted his privilege in front of the jury. However, it would have been improper for the jury to draw any inference from Paneras's exercise of his Fifth Amendment privilege. *United States v. Taylor*, 154 F.3d 675, 684 (7th Cir. 1998). Mabrook disagrees, citing *United States v. Hartmann*, 958 F.2d 774, 789 (7th Cir. 1992), in support. However, we have never found that it is permissible for a jury to make an inference from the invocation of

a witness's assertion of the Fifth Amendment and *Hart-mann* only references a First Circuit case stating that the jury may make an inference from the assertion of the privilege during *cross-examination*. *United States v. Kaplan*, 832 F.2d 676, 684 (1st Cir. 1987). Such was not the case here. Mabrook wanted Paneras to take the stand for the purpose of asserting his privilege and that is impermissible. *Taylor*, 154 F.3d at 684.

Finally, Mabrook contends that the district court erred by barring him from introducing evidence of Paneras's previous fraudulent behavior. Mabrook claims that Paneras vowed retribution because Mabrook failed to pay him the salary he was owed. Therefore, Mabrook argues, Paneras had a motive to lie to the government, and the jury should have seen him in person to assess his credibility. But Mabrook has acknowledged that the jury was aware that Paneras was a scoundrel and was capable of creating the false documents used in the scheme.[1] Knowing that Paneras was an unsavory character, the jury could have found that he alone was at fault, but instead the jury convicted Mabrook for his role in the fraud. The district court was within its discretion in refusing to allow Mabrook to parade Paneras in front of the jury for the sole purpose of putting a face to the alleged evil.

## 2. Other Alleged Errors

Mabrook claims the district court made other numerous errors which denied him his right to a fair trial. We have reviewed his claims and find them to be without merit.

First, the district court did not abuse its discretion in denying Mabrook's request for a continuance. If a party

---

[1] During trial, Mabrook presented his theory of the case to the jury, continually claiming that Paneras created the false documents and duped everyone with them, including Mabrook.

requests a motion to continue, the district court abuses its discretion if it acts arbitrarily and actual prejudice resulted from the denial. *United States v. Avery*, 208 F.3d 597, 602 (7th Cir. 2000). Mabrook argues that his motion should have been granted for two reasons, the government disclosed thousands of pages of documents just weeks before trial and he did not learn that Paneras had given documents to the government until three days before trial. Therefore, he claims, he needed additional time to procure both a handwriting expert and a computer analyst to determine whether Paneras created the documents used to establish Mabrook's guilt. Both of his arguments are meritless.

Keeping in mind the circumstances surrounding the case, we look to the amount of time for trial preparation, the likelihood of prejudice, Mabrook's diligence, the complexity of the case, the government's disclosure, the likelihood that a continuance would have satisfied Mabrook's needs, and the inconvenience to the court. *Avery*, 208 F.3d at 602. First, although Mabrook claims that he did not receive all the documents until weeks before trial, he had adequate time to prepare for trial. Also, there was little likelihood for prejudice because the government stipulated that the handwriting on the documents in question was Paneras's and not Mabrook's. Furthermore, although the district court denied Mabrook's motion to continue, it offered to address the issue again during trial if circumstances required it. However, Mabrook never renewed his request or raised the subject again. As to Mabrook's diligence, the government disclosed Paneras's cooperation more than a year before trial. Also, this was not a complex case. Additionally, the government produced all documents to which Mabrook was entitled three weeks prior to trial. Furthermore, there was little likelihood that a continuance would have satisfied Mabrook's needs; the need for a handwriting expert was eliminated by the government's stipulation and the need for a computer

analyst would have likely revealed that Paneras was capable of producing the false documents, a fact the jury already knew. Finally, the court would have been greatly inconvenienced by a continuance; witnesses had made travel arrangements to testify and the court had cleared its docket for a two-week trial. Therefore, the district court did not abuse its discretion in denying Mabrook's motion for a continuance because its decision was neither arbitrary nor prejudicial.

Next, Mabrook argues that two of the jury instructions were given in error. First, Mabrook argues that the district court gave a conscious avoidance, or "ostrich" instruction, without evidence to support it and in contradiction to the government's theory of the case. We review the district court's decision to give the instruction for an abuse of discretion. *United States v. Wilson*, 134 F.3d 855, 868 (7th Cir. 1998). An ostrich instruction is proper when "a defendant claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance." *United States v. Walker*, 25 F.3d 540, 546 (7th Cir. 1994) (quotation omitted). The fact that the government argued both that Mabrook created the false documents and that Paneras created them and Mabrook should have known they were false is permissible. The prosecution may argue both that Mabrook had actual knowledge and consciously avoided knowledge without depriving him of a fair trial. *United States v. Carrillo*, 269 F.3d 761, 770 (7th Cir. 2001).

Mabrook used false purchase orders indicating large shipments to two swimming pool supply companies to induce investments. He also used false financial statements showing the company's net worth to be ten times its actual value. Clearly, the evidence presented at trial was more than sufficient to show that Mabrook either created the false purchase orders and financial statements or took deliberate steps to avoid full or exact knowledge

of their falsity. *See United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990). First, Mabrook knew or should have known that the financial statements that he used to induce his friends to invest were false because he had to sign the tax returns reporting Global Chemical's true financial worth. Also, Mabrook was aware that Global Chemical had never produced 50,000 cases of Oxydyne as the purchase orders claimed. In truth the evidence revealed that only 1,000 cases of Oxydyne were produced. Therefore, the ostrich instruction was proper.

Mabrook also claims that the district court erroneously instructed the jury that his good faith was irrelevant. Mabrook claims that because fraud requires specific intent to defraud, an intent to repay is evidence of good faith. According to Mabrook, although he meant to defraud his victims, he also intended eventually to repay them, negating any intent to defraud. Not only is this argument circular, it is contrary to this court's precedent. In order to establish good faith, Mabrook must prove that he actually believed the information that he sent to his investors, not that he believed that he would eventually pay them back. In fact, an instruction informing the jury that a defendant's honest belief that he will ultimately be able to perform what he has promised is not in itself a defense to the crimes charged has been held to be proper. *See United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992) (citing *United States v. Alexander*, 743 F.2d 472, 478 (7th Cir. 1984)). Mabrook's good-faith belief that Global Chemical would eventually be successful is not relevant because that belief did not negate the falsity of his representations to his investors. *Dunn*, 961 F.2d at 651. Therefore, the district court did not abuse its discretion in giving the instruction.

Finally, the district court did not abuse its discretion in denying Mabrook's motion for a mistrial based on alleged prosecutorial misconduct. When determining whether pros-

ecutorial misconduct warrants a mistrial, we first con-
sider the remarks in isolation to determine whether they
were improper. *United States v. Butler*, 71 F.3d 243, 254
(7th Cir. 1995). If we decide that the remarks were im-
proper, we then look at them in context to determine
if Mabrook was denied his right to a fair trial. *Id.* In
that regard we examine (1) the nature and seriousness
of the statements, (2) whether the defendant's conduct
invited the statements, (3) whether the district court ad-
equately instructed the jury, (4) whether the defendant
had the opportunity to counter the statements, and (5) the
weight of the evidence against the defendant. *Id.*; *United
States v. Johnson-Dix*, 54 F.3d 1295, 1305 (7th Cir. 1995).

Mabrook claims that the government improperly com-
mented on his failure to file tax returns. He also takes issue
with the government's reference to his taking unfair ad-
vantage of one of his victims.[2] The government counters

---

[2] In its rebuttal summation, the prosecution told the jury:

> And what I find most disturbing is not only has Dr.
> Rahim been defrauded $600,000, he basically was de-
> frauded right in front of your eyes. He doesn't know what
> you know. Mr. Shobat [defense counsel] made that clear.
>
> He doesn't know there's no Leslie's order. He doesn't
> know his money went to pay back prior investors. He
> doesn't know his money was rolled over. He still thinks
> it is because the defendant has maintained that it was to
> him.
>
> So Mr. Shobat gets up and cross-examines him and
> makes him into the character witness. That's one of the
> most disgusting things that you're going to see in a court-
> room, ladies and gentlemen. That's taking a victim and
> using him twice. Now I have your money, and you still
> believe me, I'm going to use you again.

(Transcript of Proceedings, Volume 6 at 795.)

that Mabrook put his tax returns at issue and any commentary with regard to the witness was in response to defense tactics rather than to defense counsel himself. Looking at the prosecutor's comments both in isolation and in context of the trial, we find that the district court did not abuse its discretion in denying the mistrial. First, neither statement was so serious or inflammatory as to sway the jury to convict. Furthermore, Mabrook put his tax returns in issue in his closing argument. The district court gave a limiting instruction to the jury to disregard the statements about the tax returns and a general instruction to cure any comments about defense counsel's tactics. Finally, the weight of the evidence was against Mabrook. Therefore, we conclude that the district court did not abuse its discretion in denying Mabrook's motion for a mistrial.

## B. The District Court Properly Enhanced the Sentence

Mabrook's final argument is that at sentencing, the district court improperly imposed an enhancement under U.S.S.G. § 3B1.3 for abusing his position of trust. We review the district court's application of the enhancement de novo and review the finding that Mabrook occupied such a position under the clearly erroneous standard. *United States v. Bhagavan*, 116 F.3d 189, 192 (7th Cir. 1997).

A formal position of trust is not necessary under § 3B1.3. *United States v. Davuluri*, 239 F.3d 902, 908 (7th Cir. 2001). Instead, a court should look beyond labels and categories that characterize the relationship and focus on the nature of the defendant's relationship to the victim and the level of responsibility he was given. *Id.* Therefore, the enhancement is proper when a defendant occupied a position of trust and his abuse of that position facilitated his crime. *Id.* at 909.

In this case, the enhancement was proper. First, the district court's finding that Mabrook occupied a position of trust was not clearly erroneous. Mabrook relied on at least one close and long-term friend, Dr. Rahim, to invest in his fraudulent scheme. Therefore, with respect to Dr. Rahim, Mabrook was not engaged in an arms-length transaction; rather he used his friendship to convince Dr. Rahim that the investment was safe and profitable. *See United States v. Burke*, 125 F.3d 401, 406 (7th Cir. 1997) ("What is relevant is whether Burke relied on the relationships he previously had established with those three victims to further his fraudulent securities scheme."). Furthermore, Mabrook occupied a position of trust because he made use of the corporate form, thereby assuming a fiduciary duty with respect to his investors. *See United States v. Tiojanco*, 286 F.3d 1019, 1021 (7th Cir. 2002). Accordingly, the district court did not err in finding that Mabrook occupied a position of trust. *United States v. Strang*, 80 F.3d 1214, 1219-20 (7th Cir. 1996). Additionally, Mabrook's position facilitated his crimes. As the owner of Global Chemical, Mabrook was in a unique position to lure investors and conceal the fraud. Mabrook used purchase orders which he knew, or should have known, to be false along with financial statements which he knew inflated the company's worth to attract his friends and associates. Because these actions facilitated the commission of the fraud and concealed the true nature of the company's stability, the enhancement was appropriate. *Bhagavan*, 116 F.3d at 194.

## III.  CONCLUSION

The district judge did not abuse his discretion in making his trial rulings. Therefore, Mabrook was not denied his right to a fair trial. Furthermore, the district court's application of the abuse of position of trust enhancement

at sentencing was proper. Accordingly, we AFFIRM Mabrook's conviction and sentence.

A true Copy:

      Teste:

                          _____

                          *Clerk of the United States Court of Appeals for the Seventh Circuit*