In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-2357, 01-2543, 01-2996, and 01-4229

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LUIS GONZALEZ, ALPHONSO CHAVEZ,
JAIME RODRIGUEZ, and DAVID C. PEREZ,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 410—**Elaine E. Bucklo**, *Judge.*

ARGUED NOVEMBER 5, 2002—DECIDED FEBRUARY 6, 2003

Before FLAUM, *Chief Judge,* and CUDAHY and COFFEY,
*Circuit Judges.*

FLAUM, *Chief Judge.* Luis Gonzalez, Jamie Rodriguez,
Alphonso Chavez, and David C. Perez were all involved in
a scheme to possess and distribute drugs. After Perez
was stopped and arrested while transporting drugs in a
truck, he agreed to participate in a controlled delivery,
which led to the arrests of Gonzalez, Rodriguez and Chavez.
After trial Gonzalez and Rodriguez were found guilty of
conspiring to possess with the intent to distribute in ex-
cess of five kilograms of cocaine in violation of 21 U.S.C.
§ 846 and attempt to possess with the intent to distribute

in excess of five kilograms of cocaine in violation of 21 U.S.C. § 846. Chavez, though he was charged with both conspiracy and attempt, was found guilty only of the conspiracy charge. Perez pleaded guilty to possession with the intent to distribute in excess of 5 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). Rodriguez was sentenced to 151 months imprisonment; the other three defendants were sentenced to 235 months imprisonment. Perez appeals his sentence. Rodriguez, Gonzalez, and Chavez appeal numerous evidentiary rulings by the district court. Rodriguez and Chavez additionally appeal their sentences. For the reasons stated herein, we affirm.

## I. Background

On March 24, 2000, Perez was driving a watermelon truck on Interstate 57 near Effingham, Illinois. Perez was pulled over by a state trooper for driving 59 miles per hour where the posted speed limit was 55 miles per hour. Perez consented to a search, which uncovered 130 kilograms of cocaine. Perez claimed that he believed he was transporting marijuana and not cocaine. Perez agreed to cooperate with the police in a controlled delivery.

He told the police that he was going to be paged and given further instructions for the delivery. While he was cooperating, Perez received a page from a cellular phone that was later recovered from defendant Gonzalez. Perez called the number from the police station and engaged in a conversation with Gonzalez, which the police recorded. Gonzalez told Perez to call back when he was closer to Chicago.

Perez, along with law enforcement agents, went to a Comfort Inn in Bolingbrook, Illinois. During a series of phone conversations between Gonzalez and Perez, a meeting at the Comfort Inn was arranged. Gonzalez and Rodriguez showed up at the Comfort Inn in a brown car without

license plates at 2:30 a.m. on March 25. The men met in a room at the Comfort Inn and discussed getting a warehouse for delivery.

Meanwhile Chavez received a call from his brother Ramon asking him to get a warehouse ready. Chavez secured a warehouse in Des Plaines, Illinois, by bribing employees of the warehouse. He secured the warehouse for use at 7:00 p.m. on March 25. At trial Chavez claimed that he believed he was securing a warehouse for the purpose of "souping-up" a truck for a tractor pull.

During the day on March 25, Gonzalez spoke with Perez on the phone and set up a meeting at a McDonald's restaurant at an oasis in Des Plaines, Illinois, at 6:00 p.m. After delivering the watermelons on the truck, Perez went to the oasis. At 6:30 p.m. Perez entered the McDonald's and met Gonzalez there. Chavez arrived at 6:40 with his brother Ramon. Rodriguez, who had come with Gonzalez, was at the oasis but may have never entered the McDonald's. Ramon told Chavez to go ahead and meet them at the warehouse. Chavez did so. After the meeting Gonzalez and Ramon went to a tool store and then proceeded to the warehouse. Perez, following Rodriguez who was in a minivan, drove the truck to the warehouse.

At the warehouse Chavez took care of paying the warehouse employees. Rodriguez and Perez drove the minivan and the truck into the warehouse with Chavez. After the vehicles were in the warehouse and the doors were closed, the law enforcement officers gave an arrest signal and entered the warehouse. Chavez and Rodriguez tried to run but were caught and arrested. Gonzalez and Ramon, who were pulling up to the warehouse at the time, attempted to flee in their vehicle. A chase ensued but in the end they were arrested.

During the arrests numerous pieces of evidence were recovered, including Gonzalez's wallet and cell phones

and other personal effects belonging to the various defendants.

Perez entered into a plea agreement by which he agreed to testify against the other participants. In front of the grand jury Perez provided the testimony against the others as agreed. Rodriguez, Gonzalez, Perez and Chavez were all indicted. Ramon was not indicted. Prior to trial Perez withdrew from his plea agreement, although he still pleaded guilty. At the trial of Gonzalez, Rodriguez and Chavez, Perez testified as to his own involvement, but when asked about the involvement of the others, he stated that he was unable to remember the details.

In the end Gonzalez and Rodriguez were convicted on charges of conspiracy and attempt to possess cocaine. Chavez was convicted on the conspiracy charge. Perez pleaded guilty to a possession charge. Rodriguez received a downward adjustment because of his deportable status and was sentenced to 151 months. The other defendants were all sentenced to 235 months.

The defendants appeal, each bringing various challenges to the district court's evidentiary rulings and/or to their respective sentences. We review these challenges in turn.

## II. Discussion

### a. Challenges Based on the Constitutional Rights of Perez

Gonzalez, Rodriguez and Chavez argue that their convictions should be reversed because the initial stop of Perez violated his constitutional rights. They advance that Perez was stopped as a result of racial profiling. This argument must fail because no one other than Perez can establish standing to assert Perez's constitutional rights. *See United States v. Jackson*, 189 F.3d 502, 507-08 (7th Cir. 1999).

This court does not accept the invitation to create an unprecedented exception to constitutional rules of standing based on Gonzalez, Rodriguez and Chavez's theory that racial profiling is "so contrary to the general welfare of America" as to warrant special standing considerations.

### b. *Translation of "*Descompuesto*"*

At trial Gonzalez testified about why he brought the truck to the warehouse. In Spanish he described the truck as "*descompuesto.*" The interpreter translated this as "broken down." Seizing on this in cross-examination, the prosecution attempted to show that Gonzalez was lying. The prosecutor's questions were based on the theory that a "broken down" truck could not be driven and thus, since Gonzalez drove it, the truck could not have been "broken down." After the testimony the translator informed the judge that "broken down" was only a general translation of "*descompuesto*" and the Spanish phrase did not necessarily mean that the truck didn't work; instead it could mean that something was broken with the truck but it was still functional. Gonzalez requested that the court inform the jury of the interpreter's comments regarding the translation; the court refused. On redirect Gonzalez explained that the gears were dropping but that the truck could still operate.

Gonzalez, Rodriguez, and Chavez now challenge the district court's refusal to inform the jury of the interpreter's comments. We review the district court's evidentiary ruling for abuse of discretion. *United States v. Thomas*, 294 F.3d 899, 904 (7th Cir. 2002); *United States v. Hook*, 195 F.3d 299, 305 (7th Cir. 1999). Translation of a foreign language is generally considered a factual question and entrusted to the jury. *United States v. Zambrana*, 841 F.2d 1320, 1335 (7th Cir. 1988). A translation is sufficiently accurate if it "reasonably conveys the intent or the

idea of the thought spoken." *Id.* at 1337. In this case the translation did just that. While the prosecutor questioning Gonzalez may have tried to snag Gonzalez by implying that "broken down" can only mean nonfunctional, this is simply not true. "Broken down," just like "*descompuesto*," has various degrees of interpretation including the implication of a poor but functional condition. As such it was proper for the district court to decline to explain the phrase to the jury and to instead allow the defense a redirect examination on the meaning of the term.

### c. *The Attorney's Business Card*

During trial Gonzalez's wallet was introduced into evidence and sent back with the jury. After the trial it was discovered that the wallet contained a business card bearing the name of Chavez's attorney. Neither Chavez nor Gonzalez was informed that the wallet contained this business card when it was sent to the jury. Chavez and Gonzalez bring separate challenges relating to this business card.

### i. *Chavez's Challenge*

Chavez claims there was a Sixth Amendment violation because the business card was evidence introduced to the jury and he did not have a chance to confront this evidence. He argues that this evidence was crucial in the jury's finding against him because it tied him to the conspiracy. Although it found that the inclusion of the business card in Gonzalez's wallet was a Sixth Amendment violation, the district court ruled that the error was harmless.

While the government urges us to part from the district court and hold that there was no Sixth Amendment violation, we decide this issue solely on the harmless

error grounds—leaving the constitutional inquiry for another day. Even where the jury has been exposed to evidence that is not properly before it, a defendant is not automatically entitled to a new trial. *United States v. Paneras*, 222 F.3d 406, 411 (7th Cir. 2000). A new trial is mandated only where there is a reasonable possibility that the evidence had a prejudicial effect. *Id.*

There is no reasonable possibility that the evidence in question here had a prejudicial effect. Chavez argues that the business card provides the crucial link between him and the other conspirators. This argument completely ignores the evidence that Chavez arranged the warehouse, attended the meetings between the conspirators, and was present at the delivery point of the drugs when the arrests were made. This evidence overwhelmingly ties Chavez to the conspiracy and renders the jury's exposure to the business card harmless.

### ii. *Gonzalez's Challenge*

The government introduced into evidence pieces of paper—found in Gonzalez's wallet—containing notations relating to drugs. Gonzalez claimed that these papers ended up in his wallet as a result of the mishandling of evidence. Gonzalez argues that the presence of the business card bearing the name of Chavez's attorney supports this argument. Thus, Gonzalez claims, the government, by not informing him of the presence of the business card, suppressed favorable evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). The flaw in Gonzalez's argument is that to succeed on a Brady challenge a defendant must first show that the government "suppressed" the evidence. *United States v. Earnest*, 129 F.3d 906, 910 (7th Cir. 1997). And we have held that evidence is not regarded as "suppressed" when it can be accessed before trial by the exercise of reasonable diligence. *Id.* Here the

attorneys could have—and should have—gone through the wallet before trial as well as when the wallet was admitted into evidence. A defense lawyer's failure to inspect the evidence that has been admitted does not qualify as a government "suppression."

### d.  The Phone Transcripts

At trial the prosecution introduced into evidence English language transcripts of recorded phone conversations between Perez and the other defendants. The officer who monitored the conversations had placed the date and time of the calls at the top of each transcript. These transcripts were admitted into evidence and published to the jury with no objections.

At the close of evidence the defendants objected to the dates and times. The government agreed to have them redacted before sending the transcripts to the jury. But the jury noticed the missing dates and requested to see the transcripts with the dates and times. The court found that the transcripts had been received into evidence and published to the jury with the dates and times and should go to the jury as such. Gonzalez, Rodriguez, and Chavez now challenge this decision.

The defendants did not object to the initial admission into evidence of the transcripts with the dates and times; they have therefore forfeited their objection. When an issue is forfeited we only review for plain error. *United States v. Bonner*, 302 F.3d 776, 780 (7th Cir. 2002). Under the plain error standard, the defendants have to show not only that the court abused its discretion in admitting the evidence but also that the admission prejudiced them by influencing the verdict. *Id.* The defendants provide very little to support their argument that the admission was an abuse, especially given that the officer testified as to his practice of handling transcripts—this would

have provided a foundation for the admission of the times and dates. Furthermore, the defendants provide no argument at all as to how the inclusion of the times and dates on the transcripts prejudiced their cases. The admission therefore was not plain error.

### e. The Questioning of Perez

Gonzalez, Rodriguez, and Chavez challenge the government's questioning of Perez. Perez had originally entered into a plea agreement with the government, but prior to trial he withdrew from this agreement. When asked why he withdrew from the plea agreement, Perez testified that he had withdrawn from the agreement because he did not want to plead guilty to transporting cocaine when he thought it was marijuana. The government attempted to impeach Perez by asking if his withdrawal from the agreement was actually a result of being afraid. The prosecutor specifically asked Perez about a conversation that had transpired between the prosecutor and Perez. The prosecutor asked Perez if the prosecution had explained the witness security program and if Perez was so scared that he did not want to testify. At sidebar the district court inquired as to whether the prosecutor had a basis to ask these questions. The prosecutor responded that Perez had told him he was afraid. The defendants objected, stating that there was nothing in the record to support these questions and that the prosecutor would have to become a witness himself. The court allowed the questioning. Perez denied being afraid. On re-cross by a defense attorney, Perez also denied ever having been threatened.

Gonzalez, Rodriguez and Chavez argue that the prosecutor's questions constitute testimony as to "extrajudicial material" not based on any evidence in the record. While we have serious reservations as to the appropriateness

of this line of questioning, we need not resolve this challenging issue because even if the questioning was impermissible it constituted harmless error. The government's questioning never directly suggested that Perez had been threatened, Perez denied being afraid, and on re-cross Perez denied having ever been threatened. Additionally, given the enormity of the other evidence against the defendants in this case, we are not convinced that the jury's decision turned on the unsubstantiated implication that Perez may have been afraid to testify. We have no doubt that the jury would have reached the same outcome regardless of this line of questioning. We conclude that any error in allowing the questioning, if it was error, was harmless.

### f.  Jury Instructions

The defendants challenge the jury instructions on two grounds. First they challenge the omission in the instructions of a definition for the terms "prohibited drug" and "possession." This challenge has been waived because the defendants accepted the relevant instructions—they affirmatively stated in court, "No objection." Such affirmation is an intentional relinquishment of a right and precludes a party from seeking appellate review. *See United States v. Anifowoshe*, 307 F.3d 643, 650 (7th Cir. 2002).

Second, the defendants challenge the inclusion of an "ostrich" instruction. We review the district court's decision to give the instruction for an abuse of discretion. *United States v. Mabrook*, 301 F.3d 503, 508 (7th Cir. 2002). This instruction is proper in cases such as this one where all the defendants claimed a lack of knowledge and the evidence in the record supports a possible inference of deliberate ignorance. *Id.* The district court did not abuse its discretion in allowing the instruction.

g. *Sentencing Issues*

i. *Perez*

Perez challenges his sentence on three grounds—the upward adjustment for obstruction of justice, the refusal to apply the "safety-valve" provision, and the denial of a downward adjustment for acceptance of responsibility. We deal with each in turn.

While Perez provided complete testimony against the other defendants in front of the grand jury, at trial he stated that he could not remember the facts as they related to the others. The district court found this purported lack of memory to be perjury and thus a material obstruction of justice. We review *de novo* whether the district court made the appropriate findings to support an obstruction of justice enhancement and the underlying findings of fact are reviewed for clear error. *United States v. Jackson*, 300 F.3d 740, 749 (7th Cir. 2002). Perez's claim that his testimony was not obstruction of justice is not persuasive. The contention that Perez's selective inability to remember—at trial he still remembered everything about his own involvement—was just a coincidence is too incredible to merit further discussion. And the argument that Perez's obstruction was unrelated to his case because it was at the trial of his co-defendants is unavailing since the relevant sentencing guideline has been amended to include obstruction in closely related offenses. U.S.S.G. § 3C1.1 (1998).

The safety-valve provides an exception to the applicable statutory minimum where a defendant provides the government with complete information concerning the offense. U.S.S.G. § 5C1.2. On the safety-valve issue Perez argues that his false testimony at trial does not negate the fact that he provided the government with complete information. We review a district court's determination that a defendant is ineligible for the safety-valve for clear

error. *United States v. Williams*, 202 F.3d 959, 964 (7th Cir. 2000). In support of his argument Perez draws our attention to *United States v. Shrestha*, 86 F.3d 935 (9th Cir. 1996). In that case the Ninth Circuit upheld a district court's application of the safety-valve where the defendant recanted his helpful testimony at trial. There are two problems with Perez's reliance on *Shrestha*. First, *Shrestha* dealt with the question of whether a district court was in clear error in allowing the downward adjustment, whereas today we are faced with the question of whether the district court was in clear error in denying it. So the persuasive value of the precedent is very limited. Second, this court has never gone as far as the reasoning in *Shrestha*—indeed we have some reservations about the reach of its holding. But we are not required to decide that question today. We simply hold that the district court did not clearly err in refusing to apply the safety-valve adjustment here, where Perez recanted his testimony and perjured himself at trial. Because Perez dishonestly claimed to have forgotten the information previously conveyed, the district court found that Perez's proffer was no longer reliable. Had Perez "re-remembered" the information later, we would have a different case in which he might have become re-eligible for the safety-valve.

The third challenge Perez brings to his sentence is that the district court erred in refusing to grant a downward adjustment for acceptance of responsibility. We review a sentencing court's acceptance of responsibility determination for clear error. *United States v. Sandoval-Gomez*, 295 F.3d 757, 761 (7th Cir. 2002). Perez cooperated extensively in the arrests of the other defendants. Without Perez there would have been no initial arrests. Perez pleaded guilty even after he had lost the protection of a plea agreement. Throughout the proceedings he admitted his guilt and never took a position necessitating a

trial on the question of his culpability. The district court nonetheless refused to grant a downward adjustment for acceptance of responsibility. The district court reasoned: "So I do find that he obstructed justice and I know that that means that he cannot get acceptance of responsibility. . . . It seems to me it is not accepting responsibility to get up at trial and lie." While there is a presumption that a defendant who obstructs justice cannot get acceptance of responsibility, *United States v. Travis*, 294 F.3d 837, 840 (7th Cir. 2002), Perez is right in pointing out that this presumption can be overcome in extraordinary cases, *see*, *e.g.*, *United States v. Mayberry*, 272 F.3d 945, 949 (7th Cir. 2001); *United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir. 1993). Perez argues that this shows a legal error in that the district court judge did not recognize the existence of an exception. The government acknowledges this point.[1] They argue instead that the district court provided an assessment of the acceptance of responsibility issue independent of the obstruction issue. The government suggests that this assessment and the resulting conclusion that Perez did not accept responsibility form the basis for the denial of the adjustment. This argument is supported by the record. The district court stated that even if it could grant acceptance of responsibility it would not have done so. Hence, even if the district court did not recognize the extraordinary case exception, such error did not affect the outcome. The finding that Perez did not accept responsibility is not clearly erroneous.

---

[1]  It is not entirely clear that this concession was necessary. Given the limited scope of the extraordinary case exception and the facts of this case it may have been possible that the district court implicitly considered and rejected the extraordinary case exception argument in determining that it could not grant the downward adjustment.

### *ii. The Other Defendants*

The challenges to sentencing brought by the other defendants require only brief discussion. Chavez argues that the district court should have adjusted his sentence downward for his minor role in the offense. Rodriguez argues that his sentence should have been adjusted downward for his minimal, or alternatively minor, role in the offense. We review a district court's findings regarding a defendant's role in an offense for clear error. *United States v. Hamzat*, 217 F.3d 494, 497 (7th Cir. 2000).

Given the fact that Chavez executed the important task of securing the warehouse for delivery and Rodriguez took part in planning the delivery, was present at the warehouse for the delivery, and drove the minivan that was to be used to take delivery, we cannot say that the district court was clearly erroneous in finding that both Chavez and Rodriguez played significant roles in the offenses for which they were charged.

Chavez also challenges the upward adjustment he received for obstruction of justice. As noted above we review *de novo* whether the district court made the appropriate findings to support an obstruction of justice enhancement and the underlying findings of fact are reviewed for clear error. The obstruction of justice enhancement was based on the story he told the district court regarding his reasons for securing the warehouse. Chavez testified that he had secured the warehouse because his brother Ramon had called him and asked him to find a garage where they could "soup-up" a truck for a tractor pull. The district court found this story to be implausible and preposterous and therefore adjusted Chavez's offense level upwards for obstruction of justice. Such a conclusion is not clearly erroneous.

Rodriguez also challenges the court's refusal to apply the safety-valve provision to his sentence. As noted above

we review a district court's safety-valve determination for clear error. Rodriguez testified at sentencing regarding his involvement in the offense. During this testimony Rodriguez testified that he had no idea drugs were involved in the events of the day. The district court, not surprisingly, found this testimony to be incredible and refused to apply the safety-valve provision. That finding was not clearly erroneous.

## III.  Conclusion

For the reasons stated above, the convictions and sentences of all the appellants are AFFIRMED.

A true Copy:

      Teste:

 

*Clerk of the United States Court of
Appeals for the Seventh Circuit*