# IN THE COURT OF APPEALS OF IOWA

No. 17-1075
Filed January 9, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**KENNETH LEROY HEARD,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Robert Blink, Judge.

A defendant appeals his conviction for first-degree murder. **REVERSED AND REMANDED.**

Gary Dickey of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Potterfield, P.J., Doyle, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**POTTERFIELD, Presiding Judge.**

Kenneth Leroy Heard appeals his conviction for first-degree murder in violation of Iowa Code sections 707.1, 707.2(1)(a), and 902.1 (2007) following his second trial on the charges. On appeal, Heard argues the district court erred in denying his motion to compel a witness to take the Fifth Amendment in response to questions in the presence of the jury, his sentence is illegal because the jury did not specifically find him to be over eighteen at the time of the offense, and the district court erred in denying his motion for a new trial because the jury verdict went against the weight of the evidence.

## I. Background Facts and Proceedings.

The body of Joshua Hutchinson was found lying in the snow near an apartment complex in Des Moines on the morning of December 13, 2007. Hutchinson had suffered multiple gunshot wounds.

Hutchinson, along with Heard, Marco "Juice" Brown, and Deland "DB" Stanley formed a group called "3 in 3 out" or "third world." The group committed robberies together. Heard was viewed as the leader of the group. During the time of the murder, Stanley was in jail but had regular phone contact with the members of the group. Jacquisha "Keisha" Harris, nee Majors, often associated herself with members of the group, drove them in her car, and allowed them to stay at her house. Majors and a fifth man, Phillip "Self" Findley, were present at the time of the murder and testified against Heard at trial. Brown testified for the State at the first trial, but he asserted his Fifth Amendment privilege at the time of his deposition before the second trial, when he was to be called as a witness for Heard. The jury

could have found the following facts based on the testimony presented at the second trial.

On December 12, Majors went to Hutchinson's residence to pick up any items there belonging to Stanley since Stanley was going to be released from jail soon. Stanley was reportedly angry with Hutchinson because Hutchinson had written a letter to Stanley's girlfriend propositioning her. Majors drove Hutchinson to a restaurant where the rest of the group was located. Majors testified Hutchinson attempted to leave but Heard stopped him, telling him the group had something planned for later that night. The group left the restaurant and went to a friend's house. Around midnight, the group relocated to Majors's residence. Hutchinson lay down on Majors's bed.

Findley testified Heard called him on the night of December 12, told him there was trouble, and told him to come over to Majors's house. Once Findley arrived, Heard took him into the bathroom for privacy and told Findley that Hutchinson was talking to the police and planning to rob Heard.

Heard directed Majors to drive to a location unknown to her, giving her turn by turn directions; Heard and Hutchinson were passengers. Heard directed Findley to follow Majors's car; Brown was a passenger in Findley's car. Once the group arrived at an apartment complex, the four men went to the back of the apartment complex to a secluded area by a picnic table. It was dark. Findley testified he stood by Brown and did not see Brown with a gun. He testified Hutchinson walked up to a tree to go to the bathroom and shortly thereafter he heard gunshots. Forensic experts testified Hutchinson was shot at close range, two to three inches away from his head.

Findley and Brown ran to Findley's car and left the scene; Findley testified Brown ran with him. Majors had remained in her car because the snowy conditions hindered her progress when she tried to leave. She testified she heard gunshots and then saw Brown and Findley running to their car. Shortly thereafter, Heard arrived at her car and told her to drive him. After Findley and Brown left the scene, Heard called Findley to ask: "Are you cool?" Heard directed Majors to a friend's house, where Majors observed him pull off a rubber glove and change his jacket and his shoes.

Majors testified she drove herself and Heard back to her residence, where Brown was waiting for them. She observed Brown being very quiet and crying. Brown had hidden the gun in a garage near his father's house. Majors testified Heard stated he wanted to go back to the scene of the shooting to check whether Hutchinson was really dead or not. Majors also testified Heard described to her in detail how he shot Hutchinson.

Heard was tried and found guilty in 2007 for shooting and killing Hutchinson. His conviction was affirmed on direct appeal. *See State v. Heard,* No. 09-0102, 2010 WL 2090851, at *1 (Iowa Ct. App. May 26, 2010). Heard filed an application for post-conviction relief, alleging ineffective assistance of counsel on several grounds including inadequate cross-examination of State's witness Brown on the subject of various evidence suggesting Brown shot Hutchinson. The district court granted Heard's application for post-conviction relief in December 2015. A new trial was held in 2017; the jury returned a guilty verdict. Here, Heard challenges his conviction from the second trial on direct appeal.

**II. Standard of Review.**

Heard claims the district court improperly refused him permission to call Brown as a witness to assert any Fifth Amendment rights he retained in the presence of the jury; the evidentiary claim is reviewed for an abuse of discretion. *See State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017) ("A district court's decision to admit or exclude evidence is generally reviewed for abuse of discretion."); *State v. Parham*, 220 N.W.2d 623, 628 (Iowa 1974) (reviewing for an abuse of discretion the district court's decision to compel a witness's answers against his assertion of the privilege against self-incrimination); *see also United States v. Mabrook,* 301 F.3d 503, 506 (7th Cir.2002) ("We review a district court's denial of a defendant's motion to compel a witness to exercise his Fifth Amendment privilege in the presence of the jury for an abuse of discretion."). Heard's claims his constitutional rights to compulsory process were violated are reviewed de novo. *State v. Russell,* 897 N.W.2d 717, 724 (Iowa 2017).

**III. Discussion**

***Refusal to Compel Witness***

Heard's theory of defense was that Brown had committed the murder. Heard argues the district court erred in allowing Brown, who had testified in the first trial, to make a blanket assertion of his right against self-incrimination outside the presence of the jury instead of requiring Brown to assert his right against self-incrimination on a question-by-question basis in front of the jury. Heard argues the district court's refusal to allow him to call Brown as a witness to assert any Fifth Amendment privilege violated Heard's Sixth Amendment right to compel witnesses at trial. Heard points to evidence that suggests Brown committed the murder,

including that Brown left the scene with the murder weapon, wiped it down and hid it in his father's garage, and discarded his clothing. Stanley had stated before the murder he could order Brown to murder someone and get away with it because Brown was mentally ill, and Stanley had directed Brown to "mouse" Hutchinson. A witness overheard Brown state to Heard in the Polk County Jail, "I know you don't do nothing man. Just let me play this crazy shit, and I've got you." When Brown testified at the first trial, Heard's counsel failed to cross-examine Brown effectively, causing the post-conviction court to grant a new trial.

When Brown appeared with counsel for a deposition in preparation for Heard's second trial, he asserted his right against self-incrimination and declared he would similarly refuse to testify at trial. Heard moved to compel Brown's testimony, and the district court apparently inquired of Brown on the record, under oath, whether Brown intended to assert his Fifth Amendment privilege at trial. Brown apparently stated he did intend to do so. The district court required Heard to submit to the court the questions he planned to pose to Brown at trial.[1] The district court ruled before trial Heard could not compel Brown to appear before the jury to assert his Fifth Amendment right. There was no question by question determination in the district court as to the scope and extent of Brown's Fifth Amendment privilege.[2]

---

[1] Although there was a reported hearing on Heard's motion, we have not been provided with that transcript.

[2] The court also denied the state's request to use Brown's prior testimony because the cross-examination at the first trial was inadequate to satisfy Heard's right to confrontation of witnesses.

Heard argues Brown should not have been allowed to categorically assert his privilege against self-incrimination. "The [Fifth Amendment] privilege of a witness is narrower than that of a defendant, and extends only to specific questions; it does not encompass a refusal to take the stand at all." *Harris v. United States*, 614 A.2d 1277, 1282 (D.C. 1992), *overruled on other grounds by Carter v. United States*, 684 A.2d 331 (D.C. 1996). "[A] witness may not claim his Fifth Amendment privilege unless he has reasonable cause to apprehend danger from a direct answer." *Parham*, 220 N.W.2d at 627. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). "It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.'" *Id.* (citations omitted).

In order for a witness to assert his privilege, the district court judge must determine whether the questions might result in an answer injurious to the witness. *Id.* at 486–87 ("To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" (citations omitted)). "[A]s a general rule, when a witness'[s] invocation of his Fifth Amendment privilege conflicts with a defendant's right to compulsory process under the Sixth Amendment, the trial court must 'rule on the claim of privilege one question at a

time.'" *Johnson v. United States*, 746 A.2d 349, 355 (D.C. Cir. 2000) (citation omitted). Blanket privilege is only to be granted to a witness "when it is evident to the court that anything less will not adequately protect him." *Littlejohn v. United States*, 705 A.2d 1077, 1083 (D.C. 1997). Brown could only assert the privilege in response to specific questions to which his answers would incriminate him. *Id.* The trial judge was obligated to determine whether Brown would have been able to answer any of the questions Heard proposed without incriminating himself. Here, the trial judge did not make a question-by-question determination, but gave Brown a blanket privilege to invoke his Fifth Amendment rights to any question Heard might ask, relying on *McCormick on Evidence* to rule that Brown's unequivocal intent to assert the Fifth Amendment was sufficient to make him unavailable for trial.

Later, the district court ruled that *State v. Bedwell*, 417 N.W.2d 66, 69 (Iowa 1987) prevents a defendant from calling "a witness who has indicated an intent to assert his or her right against self-incrimination before a jury." In *Bedwell,* the Iowa Supreme Court held the district court correctly prohibited the defense from calling a witness who was predetermined to invoke his privilege against self-incrimination, adopting the language from *Bowles v. United States*, 439 F.2d 536, 541 (D.C. Cir. 1970), "the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." 417 N.W.2d at 69. Heard urges us to overturn *Bedwell*. As an intermediate appellate court, we do not possess the power to overturn Iowa Supreme Court precedent. *See, e.g.*, *State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide

if case precedent should no longer be followed."); *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

Heard argues there need be no new principle of law, but that Iowa courts should, on a case by case basis, determine when a defendant should be entitled to call a witness at trial, knowing that witness will assert his Fifth Amendment privilege. Heard argues this is a unique situation, where the witness has already testified in a previous trial while not asserting his Fifth Amendment privilege and there is strong circumstantial evidence of the witness's participation in the crime. Heard contends Brown's previous testimony under these circumstances renders his decision to assert his Fifth Amendment privilege in the second trial more probative than the witnesses' assertions of the Fifth Amendment in *Bedwell* and *Bowles*. *See* Charles R. Nesson & Michael J. Leotta, The Fifth Amendment Privilege Against Cross-Examination, 85 Geo. L.J. 1627, 1683 (1997) ("[Inferences made from the invocation of the privilege] will advance the search for truth, ensure fairness to defendants, affirm the public's confidence in our trial system, and facilitate the role of the trial as community catharsis.").

If we do not find an exception to *Bedwell*, Heard urges us to adopt a different interpretation under the Iowa Constitution, an argument he also made before the district court. We do not need to reach the Iowa Constitution under the facts of this case.

The district court's failure to determine the extent and validity of Brown's reported assertion of his Fifth Amendment privilege on his second round of

testimony resulted in a violation of Heard's right to compulsory process. Brown's unequivocal statement of his intent to assert his Fifth Amendment privilege is not sufficient to justify his blanket claim of privilege. The trial judge must appraise the claim in the context of the case. *Hoffman*, 341 U.S. at 486. The context of this case includes the witness's previous testimony as a prosecution witness without asserting his privilege, and without constitutionally adequate cross-examination. *Bedwell*'s categorical prohibition against requiring a witness to assert her Fifth Amendment privilege in the presence of the jury does not take into account the unique context of this case. We reverse and remand.

We do not reach Heard's remaining arguments in light of our resolution of his first issue.

**REVERSED AND REMANDED.**